**CITY OF FAIRBANKS, Appellant,**

v.

**FAIRBANKS CONVENTION AND VIS-
ITORS BUREAU, an Alaskan Non-
Profit Corporation, Appellee.**

**No. S–3663.**

Supreme Court of Alaska.

Oct. 11, 1991.

Herbert P. Kuss, City Atty., Fairbanks,
for appellant.

James D. DeWitt, Guess & Rudd, Fair-
banks, for appellee.

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON and
MOORE, JJ.

## OPINION

COMPTON, Justice.

In 1979 the City of Fairbanks (city) en-
acted a motel and hotel tax (bed tax) as
part of its municipal code.[1]  Up to seventy
percent of the revenues from this tax sup-
ports the Fairbanks Convention and Visi-
tors Bureau (FCVB).  In 1989 the city certi-
fied for inclusion on the general election
ballot a voter initiative to create a new
arrangement for allocating the bed tax rev-
enues.  FCVB sought declaratory and in-

---

1. Fairbanks General Code Ordinance (FGCO)    5.401 (1979).

junctive relief against the initiative in superior court, and was granted a preliminary injunction barring the initiative from appearing on the ballot. The court then declared the proposed initiative unconstitutional, concluding it repealed an appropriation, and issued a permanent injunction. The city appeals. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Under Fairbanks General Code Ordinance (FGCO) 5.402 (1988),[2] up to seventy percent of the revenues from the city's bed

**2.** FGCO 5.402 states:

(a) The tax on the daily rental of hotel and motel rooms levied by this article is for the purpose of and shall be limited to the funding of tourist and entertainment facilities for the general public and to promote the tourist industry and other economic development of the city. It is recognized that various public and private businesses and organizations in the community, including but not limited to the chamber of commerce, the Fairbanks Convention and Visitors Bureau and other bureaus, organizations and commissions organized and existing for these same purposes, may be areawide in scope and the promotion and economic development of the greater Fairbanks area, whether within or without the corporate limits of the city, has a direct and major impact on the city itself.

(b) Revenues collected under this article in the (12) month period ending October 31st of the calendar year shall be available for appropriation for the next calendar year as follows:

(1) Ten percent (10%) for the funding of the Fairbanks Industrial Development Corporation;

(2) Seventy percent (70%) for the funding of the Fairbanks Convention and Visitors Bureau;

(3) Fifteen percent (15%) for the discretionary funding of proposals which clearly demonstrate a direct relationship to the purposes and objectives set forth in this section; three percent (3%) of this amount shall be dedicated to the funding of beautification and littering projects;

(4) Five percent (5%) for forward funding of this tax account;

(5) All residual funds shall be made available for the council's discretionary funding.

(6) Any and all overhead costs relating to auditing and tax collection, as determined by the finance department, shall be subtracted from the gross amount of tax collected before disbursement as provided above.

(c) The Fairbanks Industrial Development Corporation and the Fairbanks Convention and Visitors Bureau shall submit their annual and

tax go to the FCVB unless the city council votes otherwise. There is no evidence in the record of any occasion when the council has voted to give the FCVB less than seventy percent. The FCVB received approximately $750,000 from the bed tax during 1989; this was about eighty-five percent of its total budget.

In the summer of 1989 the Interior Taxpayers Association (ITA), a citizens' group, proposed an initiative for the October 3rd general election ballot. The proposed initiative would substantially change FGCO 5.402.[3] It would expand the purposes for

maximum operating budget to the council for approval no later than October 31st of the current calendar year. The council shall review these budgets no later than December 1st of the current calendar year and, if approved, may appropriate revenues in accordance with the scheduled and maximum percentages. In the event the council fails to review these budgets by December 1st, the budgets shall be deemed approved and the scheduled percentages shall be appropriated to them.

In addition, in their budget submissions the Fairbanks Industrial Development Corporation and the Fairbanks Convention and Visitors Bureau shall provide the council with a financial statement including both income and expenditures for the current calendar year.

(d) Any organization, public or private, or any person may submit an application and proposal, if any, to the council prior to October 31st of the current calendar year which seeks funding from the capital project fund or the discretionary fund. The council shall establish the criteria for selection and publish the same no later than August 1st of the current calendar year. A committee shall be appointed by the mayor to review proposals and make recommendations to the council. Two (2) members of the visitor industry (Fairbanks Convention and Visitors Bureau or Alaska Visitors Association) shall sit on this committee. Nothing in this subsection shall require the council to fund any proposal.

**3.** The ITA–sponsored initiative provides:

Shall FGCO sec. 5.402 which limits the use of the hotel/motel tax ... be repealed and reenacted as follows:

Sec. 5.402. Purpose and limitation.

(a) The tax on the daily rental of hotel and motel rooms levied by this article is for the purpose of funding city facilities and services for the general public and to promote the tourist industry and other economic development of the city.

(b) Any organization, public or private, or any person may submit an application and proposal, if any, to the council no later than

which bed tax revenues can be used, not limiting funding to tourist and entertainment activities. In addition, it would delete the maximum percentage level of funding specified for FCVB and other groups, leaving FCVB to compete for tax revenues. FCVB would no longer automatically receive a particular share, or any share at all.[4] As the superior court noted, "[t]he current Section 5.402 operates to tie the City Council's hands in the spending of revenue generated from the hotel/motel bed tax and earmarks funds for specific purposes. The initiative would remove almost all of those restrictions." *Fairbanks Convention & Visitors Bureau v. Roberson*, No. 4FA–89–1478 Civ., mem. decision and order at 6 (Alaska Super. Sept. 18, 1989). On August 29, 1989, the city clerk certified the initiative for placement on the ballot.

FCVB filed suit on September 1, seeking declaratory and injunctive relief. FCVB argued that the initiative was an unconstitutional attempt to appropriate money, dedicate tax revenues to a specific purpose, and repeal an existing appropriation. The city responded that the initiative did not make or repeal an appropriation, or dedicate funds. Alternatively, the city argued that if the court determined that the initiative dedicated funds unconstitutionally, the court could cure the initiative by severing any unconstitutional portions. The court concluded that the proposed initiative repealed an existing appropriation. It did not reach the other issues. It granted FCVB's

motion for summary judgment and issued a permanent injunction.

There are no genuine issues of material fact in this case. The parties do not dispute that the Fairbanks City Council has the power to enact a municipal ordinance identical to the proposed initiative. This appeal is not about whether the city council could do what the initiative petition seeks; rather, the issue is whether this goal can be attained through an initiative.

## II. DISCUSSION

█ The usual rule applied by this court is to construe voter initiatives broadly so as to preserve them whenever possible. *Thomas v. Bailey*, 595 P.2d 1, 3 (Alaska 1979). However, initiatives touching upon the allocation of public revenues and assets require careful consideration because the constitutional right of direct legislation is limited by the Alaska Constitution. Article XI, section 7 of the Alaska Constitution states in part:

> The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules or enact local or special legislation.

The City of Fairbanks is a home-rule municipality, and the initiative limitation has been extended by statute to home-rule municipalities. AS 29.10.030(c).[5] Therefore, the proposed initiative is illegal if it makes or repeals an appropriation or dedicates funds.

By its own language, the initiative repeals FGCO 5.402.[6] Therefore, to decide

---

two (2) months prior to the expiration of the current fiscal year which seeks funding from the discretionary fund for the following fiscal year. The council shall establish standards and criteria for selection and publish the same for a reasonable period before the applications are to be submitted. A committee shall be appointed by the mayor with council concurrence to review the proposals and make recommendations to the council.

**4.** The initiative may also affect what organizations can obtain the revenues. Under the existing ordinance, tourist organizations and other organizations which promote economic development in Fairbanks but operate outside the corporate limits of the city can be funded from bed tax revenues. The proposed initiative is

silent on whether such organizations could be funded, but the deletion of the language in the first paragraph of the existing ordinance indicates that the proponents of the initiative intend to change the way organizations operating outside the city limits are to be treated.

**5.** AS 29.10.030(c) reads: "A charter may not permit the initiative and referendum to be used for a purpose prohibited by art. XI, sec. 7 of the state constitution."

**6.** The city argues that even if the ordinance is an appropriation, the initiative merely amends it and does not repeal it, despite its use of the term "repeal and reenactment." Amending an appropriation through an initiative, the city argues, is not unconstitutional.

whether the initiative violates the Alaska Constitution, we must first determine whether FGCO 5.402 is an appropriation. The superior court concluded that FGCO 5.402 is an appropriation, and that the proposed initiative is an unconstitutional attempt to repeal this appropriation. We disagree, for reasons hereafter stated.

Since we conclude that the initiative does not repeal an appropriation, we must consider whether it makes an appropriation or dedicates funds. These issues were not considered by the superior court but have been raised by FCVB as alternative grounds for affirming the judgment. This is procedurally proper as, "[t]his court may affirm a judgment of the superior court on different grounds than those advanced by the superior court and even on grounds not raised by the parties in the superior court." *Sisters of Providence v. Municipality of Anchorage*, 672 P.2d 446, 448 n. 2 (Alaska 1983). On questions of law, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). We conclude that the initiative neither makes an appropriation nor dedicates funds.

## A. Does the initiative repeal an appropriation?

Our prior cases defining "appropriation" in the context of article XI, section 7 have concentrated on the two parallel purposes for preventing the making of appropriations through the initiative process. First, initiatives should not be "used to enact give-away programs, which have an inherent popular appeal, that would endanger the state treasury." *Thomas v. Bailey*, 595 P.2d 1, 7 (Alaska 1979). This is because "[i]nitiatives for the purpose of requiring appropriations were thought to pose a special danger of 'rash, discriminato-

ry, and irresponsible acts.'" *Id.* (quoting V. Fischer, Alaska's Constitutional Convention 80–81 (1975)). The second "reason for prohibiting appropriations by initiative is to ensure that the legislature, and *only* the legislature, retains control over the allocation of state assets among competing needs." *McAlpine v. Univ. of Alaska*, 762 P.2d 81, 88 (Alaska 1988).

■ In the context of an initiative that would repeal an appropriation, only the second of these purposes—retention of control of the appropriation process in the legislative body—is relevant. We have ruled on a number of cases involving initiatives which arguably made appropriations. In those cases we construed the term "appropriations" broadly so that the intent of our constitutional framers in prohibiting appropriations by initiative would be fully met. Thus, in *Thomas v. Bailey*, 595 P.2d 1, 7 (Alaska 1979), we extended the definition of appropriation to include transfers of non-monetary assets such as land. In *Alaska Conservative Political Action Committee v. Municipality of Anchorage*, 745 P.2d 936, 938 (Alaska 1987), we held that an appropriation need not involve public revenues if it compelled transfer of a government asset. Most recently, in *McAlpine v. University of Alaska*, 762 P.2d 81, 89 (Alaska 1988), we concluded that the prohibition against appropriations by initiative applied to initiatives which "simply designate[d] the use of assets."

■ In a broad sense, FGCO 5.402 is arguably an appropriation because it designates bed tax revenues for the purpose of tourist and entertainment facilities and other economic development.

However, the purposes of the constitution are not met by construing the term "appropriations" broadly in the context of an initiative which arguably repeals an ap-

---

We do not find this argument persuasive. The language of the initiative includes the word "repeal," not "amend," and this language determines the intent of the initiative. A comparison of the ordinance and the initiative section by section demonstrates that the initiative effectively replaces most of the existing ordinance. As this court has noted previously, "[a]n amendment of an act operates as a repeal of its provi-

sions to the extent that they are materially changed by, and rendered repugnant to, the amendatory act." *Warren v. Thomas*, 568 P.2d 400, 402 (Alaska 1977) (quoting *Meyers v. Bd. of Supervisors*, 110 Cal.App.2d 623, 243 P.2d 38, 42 (1952)). It would be unreasonable to consider the initiative to be a continuation of the existing ordinance when it so completely emasculates that ordinance.

propriation. The purpose of the prohibition on repeal of appropriations by initiative is to ensure that the legislative body remains in control of and responsible for the budget. A broad construction of "appropriations" is not necessary to accomplish this purpose. Repealing a particular law that is an appropriation in a broad sense, because, for example, it permanently designates assets for a special purpose, does not disempower the legislative body from making annual spending decisions. It follows that the general rule that the initiative power will be construed broadly should control in the repeal context, and result in a more narrow construction of the term "appropriations." In our view, in the context of the prohibition on repealing "appropriations," the term should be used in the same sense as the legislature has used it in the municipal code, AS 29.35.100, that is as an act which accompanies the approval of the annual budget or is supplemental to that act:

> The governing body shall establish the manner for the preparation and submission of the budget and capital program. After a public hearing, the governing body may approve the budget with or without amendments and shall appropriate the money required for the approved budget. (b) The governing body may make supplemental and emergency appropriations. Payment may not be authorized or made and an obligation may not be incurred except in accordance with appropriations.

FGCO 5.402 is not an appropriation in the sense of the term used in AS 29.35.100 because it does not reflect an action taken by the governing body after annual approval of the budget, nor can it be construed in any sense to be a supplemental or emergency act of the governing body.

### B. *Does the initiative itself make an appropriation?*

■ The FCVB argues that even if the initiative does not repeal an existing appropriation in FGCO 5.402, it itself makes an appropriation. It claims that the setting aside of bed tax revenues for deposit in a city council discretionary fund meets the "classic definition" of appropriation, comparing this use of funds to the attempt to convey state property to a new community college in *McAlpine* and the attempt to convey state utilities in *ACPAC*. The city, on the other hand, argues that the initiative would not allocate funds specifically any more than the present FGCO 5.402 does, but rather broadens the city council's authority to appropriate bed tax funds.

We find the city's argument persuasive. Applying the same test to the initiative as we did to the existing ordinance, we must ask whether the initiative would set aside a certain specified amount of money or property for a specific purpose or object in such a manner that is executable, mandatory, and reasonably definite with no further legislative action. The initiative does not meet these requirements.

Under the terms of the initiative, any public or private organization or any person can apply to the city council for funding from the discretionary fund for a particular fiscal year. These applications are to be reviewed by a committee appointed by the mayor with council concurrence, and then voted on by the council before any funds are distributed. The initiative specifies no sums that must be distributed, no specific purpose that must be funded, and no mandatory process that must be followed.

A reference to the dual purposes behind the prohibition of initiatives which make appropriations is instructive. First, the initiative is not a give-away program. No particular group or person or entity is targeted to receive state money or property, nor is there any indication that by passing this initiative, the voters would be voting themselves money. Second, this initiative does not reduce the council's control over the appropriations process. Instead, the initiative allows the council greater discretion in appropriating funds than does the current law. It is axiomatic that if FGCO 5.402 does not make an appropriation, then the initiative, which affords greater legislative discretion and is not a give-away program, cannot make an appropriation.

### C. Does the initiative dedicate revenues?

■ The city concedes that FGCO 5.402 as currently written is a dedicated fund.[7] The question is whether the initiative, which would repeal and reenact that ordinance, itself dedicates revenues. We have not had occasion to review the clause in article XI, section 7 of the Alaska Constitution prohibiting initiatives which dedicate revenues. However, we have reviewed a similar provision in article IX, section 7, which prohibits the dedication of the proceeds of any state tax or license to any special purpose. Because the language of these two provisions is similar, we adopt a similar analysis of the meaning of each provision and the purposes behind them.

This court has considered the meaning of dedicated revenues only once before. In *State v. Alex,* 646 P.2d 203 (Alaska 1982), we held that a mandatory tax on the sale of salmon, the proceeds of which were to be allocated to regional associations for enhancement of salmon production, was an unconstitutional dedication of revenues. In reaching that conclusion, we relied on the fact that the allocation of revenues to the regional associations was mandatory, leaving no discretion to the legislature to spend the money in any other way. We also noted that other provisions of the statute entitled the regional associations to rely on the receipt of the salmon tax funds as collateral for state loans or as evidence of their ability to establish sufficient equity in their hatcheries. As we said, "[t]hese provisions are nonsensical if the assessments are not earmarked in some way so that the association has a 'right' to them." *Alex,* 646 P.2d at 208.

The questioned initiative would not create any similar "right" for any person or group. It would not earmark any funds for any particular organizations. Nor does it create any mandatory expenditures. In the context of the current law, it actually broadens, rather than limits, the council's discretion to spend money for the benefit of the city. FCVB nevertheless argues that the initiative would require the dedication of revenues to a specific purpose. We disagree. The initiative's statement of purpose cannot be characterized as a dedication. Indeed, the phrase used in the initiative, "for the purpose of funding city facilities and services for the general public," is so broad as to include any city expenditures.

Analysis of the purposes behind the prohibition of dedicated revenues confirms our conclusion. In *Alex,* 646 P.2d at 209–10, we cited the Alaska Statehood Commission's studies on dedicated revenues as the motivation for the inclusion of article IX, section 7 in the Alaska Constitution:

> Even those persons or interests who seek the dedication of revenues for their own projects will admit that the earmarking of taxes or fees for other interests is a fiscal evil. But if allocation is permitted for one interest the denial of it to another is difficult, and the more special funds are set up the more difficult it becomes to deny other requests until the point is reached where neither the governor nor the legislature has any real control over the finances of the state.

3 Alaska Statehood Commission, Constitutional Studies pt. IX, at 111 (1955). Thus the two main motivations behind the ban on dedicated revenues were to maintain the potential of flexibility in budgeting and to ensure that the legislature did not abdicate responsibility for the budget. In the initiative context, only the former motivation is relevant.

The initiative in this case does not infringe on flexibility in the budget process. Indeed, it removes existing restraints on the city council's flexibility. Under the current law, the city council is encouraged, if not obligated, to appropriate certain percentages of the city's bed tax revenues to certain groups. In addition, all appropriations of bed tax revenues must be "for the purpose of and shall be limited to the funding of tourist and entertainment facilities."

---

7. We note that neither party addressed the issue of whether the ordinance itself violates article XI, section 7 of the Alaska Constitution, prohibiting dedicated revenues. Our decision today should not be read as expressing any opinion on that question.

The initiative eliminates each of these dedications. Under the initiative, bed tax revenues could be used to fund any city facility or service, not just tourist and entertainment facilities, and there is no organization "entitled" to receive funds simply upon approval of its budget. By no means would the initiative restrict the power of the city council in distributing the bed tax revenues. The initiative might be better described as an "undedication" than a dedication.

## III. CONCLUSION

For the above reasons, we hold that the initiative is constitutional, and should be placed on the ballot. The decision of the superior court granting summary judgment for FCVB and a permanent injunction against the initiative is REVERSED and the case REMANDED with directions to enter judgment on behalf of the city and to dismiss FCVB's complaint.