The ALASKA LEGISLATIVE COUNCIL, on behalf of the ALASKA STATE LEGISLATURE, Appellant,

v.

Honorable Tony KNOWLES, in his official capacity as Governor of the State of Alaska, Appellee.

No. S–10344.

Supreme Court of Alaska.

Jan. 9, 2004.

Rehearing Denied April 1, 2004.

James P. Crawford, Division of Legal and Research Services, Legislative Affairs Agency, Juneau, for Appellant.

Joanne M. Grace, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Thomas S. Waldo, Earthjustice, Juneau, for Amici Curiae Alaska Center for the Environment, Northern Alaska Environmental Center, and Southeast Alaska Conservation Council.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

The Alaska Legislative Council appeals the superior court's denial of its challenge to former Governor Tony Knowles's veto of, and refusal to implement, Senate Bill 7, which transfers land and the income derived from that land to the University of Alaska. The legislative council argues that the superior court erred in holding that S.B. 7 constitutes an appropriation subject to the governor's enhanced veto power requiring a three-fourths vote by the legislature in order to override the veto under article II, section 16 of the Alaska Constitution. Because the superior court erred in concluding that S.B. 7 is an appropriation to the University of Alaska, we reverse the superior court's grant of summary judgment to the governor.

## II. FACTS AND PROCEEDINGS

### A. Facts

The Alaska Legislature passed S.B. 7 on March 30, 2000. Senate Bill 7 enacted AS 14.40.365, which entitles the University of Alaska to select between 250,000 and 260,000 acres of state lands.[1] The bill provides that selected land would then be conveyed to and managed by the university under amendments to AS 14.40.170(a)[2] and

1. Under Committee Substitute for Senate Bill (C.S.S.B.) 7, 21st Leg. 2nd Sess. (2000), AS 14.40 is amended by adding AS 14.40.365, which reads in relevant part:

   University land from Statehood Act land selection conveyances.

   (a) The University of Alaska may select and is entitled to receive the conveyance of not less than 250,000 and not more than 260,000 acres of land conveyed to the state under Sec. 6(b) of the Alaska Statehood Act (P.L. 85–508, 72 Stat. 339). The Board of Regents of the University of Alaska shall periodically submit a list of selections to the commissioner of natural resources and, if the list of selections contains land within the boundaries of a municipality, the Board of Regents of the University of Alaska shall submit the list to the municipality. The Board of Regents and the commissioner of natural resources shall periodically and jointly submit to the legislature, within 30 days of the beginning of a regular legislative session, a list of the selections of land proposed to be conveyed by the state to the University of Alaska under this section. If the list submitted to the legislature contains land within the boundaries of a municipality, the Board of Regents and the commissioner of natural resources shall provide a copy of the list to the municipality. Each list must contain not more than 25 percent of the total acres of land to which the university is entitled after subtracting previous conveyances under this section, but not less

   than 25,000 acres or the remaining entitlement under the section, whichever is less. A list of selections submitted shall be considered approved for conveyance to the University of Alaska unless the legislature acts to disapprove the list during the legislative session during which the list was submitted. If the amount of land to be conveyed exceeds the balance due the university under this section, the university shall set out the land to be conveyed in priority order.

2. C.S.S.B. 7 amends AS 14.40.170(a) to read in relevant part (underlined text is new):

   (a) The Board of Regents shall

   . . .

   (4) have the care, control, and management of

   (A) all the real and personal property of the university; and

   (B) land

   (i) conveyed to the Board of Regents by the commissioner of natural resources in the settlement of the claim of the University of Alaska to land granted to the state in accordance with the Act of March 4, 1915 (38 Stat. 1214), as amended, and in accordance with the Act of January 21, 1929 (45 Stat. 1091), as amended; *and*

   *(ii) selected by the University of Alaska and conveyed to it by the commissioner of natural resources under AS 14.40.365;*

AS 14.40.291.[3] Senate Bill 7 also provides that the income from the transferred land will be held in perpetual trust for the benefit of the university.[4]

Governor Knowles vetoed the bill on April 17, 2000, stating that " 'earmarking' state lands for dedicated projects 'will complicate state land management, contribute to significant land use conflicts, and likely lead to years of litigation.' " On April 21, 2000 the legislature voted to override the veto by a margin of forty-one to nineteen, a margin representing more than two-thirds but less than three-fourths of the legislature voting to override the veto. Governor Knowles rejected the override vote, asserting that the legislature did not reach the three-fourths override vote required to override a veto of an appropriations bill.

### B. Proceedings

The legislative council brought suit to force Governor Knowles to implement S.B. 7, asserting that it is not an appropriations bill subject to the governor's enhanced appropriations veto. The conservation amici[5] attempted to intervene in that action in order to challenge the constitutionality of S.B. 7, but the superior court denied their motion to

intervene because that court decided only the question whether S.B. 7 was an appropriations bill subject to the governor's enhanced veto. The superior court held that S.B. 7 was an appropriations bill, thereby upholding the governor's veto of S.B. 7. The legislative council appeals.[6]

### III. STANDARD OF REVIEW

We review constitutional issues *de novo*, as they present questions of law.[7] In reviewing such questions we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." [8]

### IV. DISCUSSION

### A. Non–Monetary Asset Transfers Are Not Appropriations Subject to the Governor's Enhanced Veto Under Article II of the Alaska Constitution.

This appeal requires us to decide whether S.B. 7 constitutes an appropriation under article II, section 16 of the Alaska Constitution. Under article II, section 15, the governor is empowered to "veto bills passed by the legislature" and "may, by veto,

---

3. C.S.S.B. 7 amends AS 14.40.291 to read (underlined text is new; bracketed text is deleted):

> (a) Notwithstanding any other provision of law, university-grant land, state replacement land that becomes university-grant land on conveyance to the university, *land selected by and conveyed to the University of Alaska under AS 14.40.365*, and any other land owned by the University of Alaska is not and may not be treated as state public domain land. *Land conveyed to the University of Alaska under AS 14.40.365 shall be managed under AS 14.40.365–14.40.368 and policies of the Board of Regents of the University of Alaska.*
>
> (b) Title *to* or interest *in* [TO] land described in *(a) of* this section may not be acquired by adverse possession, prescription, or in any other manner except by conveyance from the university.
>
> (c) The land *described in (a) of this section* is subject to condemnation for public purpose in accordance with law.

4. C.S.S.B. 7 amends AS 14.40.400(a) to read (underlined text is new; bracketed text is deleted):

> (a) The Board of Regents shall establish a separate endowment trust fund in which shall be held in trust in perpetuity *all*

(1) [ALL] net income derived from the sale or lease of the land granted under the Act of Congress approved January 21, 1929, as amended; [AND]
> (2) *net income derived from the sale, lease, or management of the land selected by and conveyed to the University of Alaska under AS 14.40.365; and*
> (3) [All] monetary gifts, bequests, or endowments made to the University of Alaska for the purpose of the fund.

5. The Alaska Center for the Environment, the Northern Alaska Environmental Center, and the Southeast Alaska Conservation Council are collectively referred to as the conservation amici.

6. Conservation amici seek to intervene if we decide this case on the basis of the constitutional prohibition against dedicated funds. If we decline to reach that issue but determine that S.B. 7 is not an appropriations bill, the conservation amici ask that the case be remanded so that they may renew their motion to intervene.

7. *State v. Malloy*, 46 P.3d 949, 951 (Alaska 2002).

8. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

strike or reduce items in appropriation bills."[9] The legislature's power to override the Governor's veto depends on the type of bill that has been vetoed. Under article II, section 16, "[b]ills to raise revenue and appropriation bills or items, although vetoed, become law by affirmative vote of three-fourths of the membership of the legislature. Other vetoed bills become law by affirmative vote of two-thirds of the membership of the legislature."[10] Accordingly, if S.B. 7 was an appropriation bill, the legislature failed to override the governor's veto; if it was not an appropriation bill, the affirmative vote of forty-one members of the legislature was sufficient to enact it into law. For the reasons that follow, we hold that S.B. 7 was not an appropriation and that the legislature therefore successfully overrode the governor's veto.

The governor argues that our previous decisions allowing non-monetary asset transfers to be classified as appropriations under article XI, section 7 of the Alaska Constitution should be extended to govern the scope of an appropriations veto under article II. But these decisions arose in the context of article XI of the Alaska Constitution, which grants Alaska's citizens the right to "propose and enact laws by the initiative, and approve or reject acts of the legislature by the referendum."[11] This right is limited, and initiatives and referenda cannot be used to "make or repeal appropriations."[12] We previously held that "by the term 'appropriations,' article XI, section 7 prohibits an initiative whose primary object is to require the outflow of state assets in the form of land as well as money."[13] More recently, we expanded the non-monetary definition of "appropriations" under article XI to include initiatives prioritizing the right to harvest salmon[14] and designating University of Alaska land for use by the Community College System of Alaska.[15] These decisions struck down non-monetary asset transfers as unconstitutional appropriations under article XI, section 7 of the Alaska Constitution.

▪ In the present case, the superior court held that article II, section 16 of the Alaska Constitution shares article XI, section 7's broad definition of an appropriation, and that "a bill [that] results in removing or dedicating assets from the treasury that would otherwise be available to fund state government" is therefore an appropriations bill.[16] While it is appealing to interpret the Alaska Constitution to have a consistent definition of "appropriations" throughout the document, articles II and XI require different interpretations of "appropriations" because they serve vastly different purposes.[17] Article XI provides citizens with a limited power to enact laws. The limitations concerning appropriations have two parallel purposes—preventing the dissipation of state resources by popular vote and vindicating legislative control over the allocation of state assets. As we stated in *City of Fairbanks v. Fairbanks Convention and Visitors Bureau*:

Our prior cases defining "appropriation" in the context of article XI, section 7 have concentrated on the two parallel purposes

---

9. Alaska Const. art. II, § 15.

10. Alaska Const. art. II, § 16.

11. Alaska Const. art. XI, § 1.

12. Alaska Const. art. XI, § 7.

13. *Thomas v. Bailey*, 595 P.2d 1, 7 (Alaska 1979) (ballot initiative granting state land to certain Alaska residents was an unconstitutional appropriation by initiative).

14. *Pullen v. Ulmer*, 923 P.2d 54, 59 (Alaska 1996).

15. *McAlpine v. University of Alaska*, 762 P.2d 81, 87–89 (Alaska 1988).

16. *Legislative Council v. Knowles*, No. 1JU–00–1237 CI (Alaska Super., August 17, 2001).

17. We have held that even within the context of article XI, section 7, the word "appropriations" may have different meanings depending on whether the challenged initiative seeks to *make* an appropriation or *repeal* one. *City of Fairbanks v. Fairbanks Convention and Visitors Bureau*, 818 P.2d 1153, 1156–57 (Alaska 1991). A broad construction is used to prevent the enactment by initiative of state asset give-away programs. *Id.* at 1156. But as this reason does not apply when an initiative merely seeks to repeal an appropriation, a narrow construction is used in repeal cases. In repeal cases the term "appropriations" is construed to refer only to annual spending decisions. *Id.* at 1157.

for preventing the making of appropriations through the initiative process. First, initiatives should not be "used to enact give-away programs, which have an inherent popular appeal, that would endanger the state treasury." *Thomas v. Bailey*, 595 P.2d 1, 7 (Alaska 1979). This is because "[i]nitiatives for the purpose of requiring appropriations were thought to pose a special danger of 'rash, discriminatory, and irresponsible acts.'" *Id.* (quoting V. Fischer, Alaska's Constitutional Convention 80–81 (1975)). The second "reason for prohibiting appropriations by initiative is to ensure that the legislature, and only the legislature, retains control over the allocation of state assets among competing needs." *McAlpine v. Univ. of Alaska*, 762 P.2d 81, 88 (Alaska 1988).[18]

Accordingly, in cases involving making appropriations by initiative, we have carried out the framers' design to prevent popular give-away programs and maintain legislative control over the allocation of state assets by broadly interpreting the scope of "appropriations" under article XI of the Alaska Constitution.

In contrast, article II's definition is not governed by the overriding goal of preventing initiatives from wasting public assets or encroaching on protected legislative powers. Instead, article II, sections 15 and 16 of the Alaska Constitution govern the balance of power between the legislative and executive branches of Alaska's government. Because articles II and XI serve different purposes, we reject the governor's argument that the expansive scope given "appropriations" in article XI as to the making of appropriations should be extended to article II. We determine the scope of "appropriations" as used in article II by examining the minutes of the Constitutional Convention and the Alaska Constitution itself.

■ We have previously treated article II appropriations as being limited to monetary appropriations. In *Alaska Legislative Council v. Knowles*,[19] (*Knowles II* ) we determined the scope of the governor's power to veto individual items in an appropriations bill under article II, section 15 of the Alaska Constitution.[20] We assumed that items in appropriations bills, and therefore bills composed of individual items, can only appropriate monetary assets:

> Reducing an item lessens its amount; striking it lessens its amount to nothing. This implies that an 'item' must include a sum of money. Likewise, a passage that does not include a 'sum of money dedicated to a particular purpose' is not an 'item' which the governor can strike or reduce. Therefore, a veto that does not delete or reduce the amount of money appropriated is not a valid exercise of the power article II, section 15 grants.[21]

Though *Knowles II* involved the governor's veto of language restricting a monetary appropriation under the item veto power,[22] rather than the veto of a non-monetary appropriation under the general power to veto an entire bill as presented by this case, its understanding of article II appropriations is instructive. We now explicitly adopt *Knowles II*'s exclusively monetary characterization of article II appropriations items and hold that the governor's appropriations veto applies only to monetary appropriations.[23]

This conclusion finds ample support in the minutes of the Alaska Constitutional Convention, which demonstrate that the framers of the Alaska Constitution intended the governor's appropriations veto under article II, sections 15 and 16 to apply only to monetary appropriations. The framers repeatedly referred to appropriations in monetary terms

---

18. 818 P.2d 1153, 1156 (Alaska 1991).

19. 21 P.3d 367 (Alaska 2001).

20. In addition to providing the governor with the power to veto entire bills, the issue presented by this case, Alaska Constitution article II, § 15 also grants the governor the power to "veto, strike, or reduce items in appropriations bills."

21. *Knowles II*, 21 P.3d at 373.

22. *Id.* at 370–71.

23. We gave a similarly narrow construction to the use of the term "appropriations" in article XI, section 7 with respect to the prohibition on repealing appropriations by initiative in *City of Fairbanks v. Fairbanks Convention and Visitors Bureau*, 818 P.2d 1153, 1157 (Alaska 1991).

during the debates over article II, section 15. Delegate Sundborg understood that the enhanced, three-fourths veto override requirement would apply to "any bill dealing with taxation or any bill affecting payments of money under existing statutes or an item or items in the general appropriations bill." [24] Delegate McCutcheon, a member of the committee that drafted that section, understood the section to provide that "a greater number [of votes were] required to override the veto on money matters." [25] Delegate V. Rivers stated that this section was "a provision in regard to the appropriation and spending of money which would allow somewhat more power to lie in the strong executive." [26] If the delegates had intended the governor's appropriation veto to encompass non-monetary asset transfers, we would expect to see in the minutes and the section proposals some indication of that intention. Instead the minutes indicate that the delegates never intended the governor's article II appropriations veto power to apply to anything other than monetary appropriations.

The framers' intention to limit the scope of article II appropriations to money bills is made clear by the entire constitutional framework, as extending the scope of article II appropriations to encompass non-monetary asset transfers would create a host of problems in interpreting other articles of the Alaska Constitution. For example, if non-monetary asset transfers were deemed appropriations, application of article II, section 13—confining bills for appropriations only to appropriations [27]—would become problematic. *Knowles II* adopted a five-part test for determining whether a bill satisfies that section's clause confining appropriations bills only to appropriations, stating that

to satisfy the confinement clause, "the qualifying language must be the minimum necessary to explain the Legislature's intent regarding how the money appropriated is to be spent. It must not administer the program of expenditures. It must not enact law or amend existing law. It must not extend beyond the life of the appropriation. Finally the language must be germane, that is appropriate, to an appropriations bill." [28]

As evidenced by S.B. 7, which governs both the transfer of land to the university and the management of that land by the university, the separation of bills concerning appropriations and substantive law mandated by article II, section 13 of the Alaska Constitution's confinement clause would be virtually impossible to maintain if non-monetary asset transfers were considered appropriations under article II.[29] As difficult as it is for the legislature to maintain the line between making monetary appropriations and creating substantive law, it would be far more difficult for the legislature to make non-monetary asset transfers without straying into substantive law. Adopting an exclusively monetary concept of appropriations under article II of the Alaska Constitution comports with the overall constitutional intent to avoid such confusion.

Article IX of the Alaska Constitution, which governs finance and taxation, also supports limiting the scope of the governor's article II, section 15 appropriations veto power to monetary bills. Article IX requires the governor to submit a budget to the legislature at a fixed time each year; the budget must "set[ ] forth all proposed expenditures and anticipated income." [30] At the same time, the governor must submit a general appropriation bill to authorize the proposed expenditures.[31] This strictly monetary con-

---

**24.** 3 Proceedings of the Alaska Constitutional Convention (PACC) 1739 (January 11, 1956).

**25.** *Id.* at 1740.

**26.** *Id.* at 1741.

**27.** Alaska Const. art. II, § 13 provides in relevant part that "[e]very bill shall be confined to one subject unless it is an appropriation bill or one codifying, revising, or rearranging existing laws. Bills for appropriations shall be confined to appropriations."

**28.** *Knowles II*, 21 P.3d at 377 (quoting No. 1JU–80–1163 CI (Alaska Super., May 25, 1983)).

**29.** C.S.S.B. 7.

**30.** Alaska Const. art IX, § 12.

**31.** Alaska Const. art. IX, § 12 provides:

The governor shall submit to the legislature, at a time fixed by law, a budget for the next fiscal year setting forth all proposed expenditures

cept of appropriations suggested by article IX, section 12 of the Alaska Constitution is instructive in this case. If non-monetary asset transfers were deemed to be appropriations, article IX, section 12 would presumably require such asset transfers to be included in the several appropriation bills submitted by the governor.

Additionally, viewing non-monetary land transfers as appropriations would not comport with article IX, section 16 of the Alaska Constitution,[32] which establishes a $2.5 billion limit on annual legislative appropriations (adjusted for inflation). Treating non-monetary asset transfers as appropriations is not only inconsistent with the language of article IX, section 16, but it poses the further problem of how to calculate the value of such asset transfers to ensure that they fall within the appropriations limits imposed by the Alaska Constitution. In expressing the limit in dollars, article IX, section 16 reflects a constitutional structure that treats "appropriations" as dealing exclusively with money transfers. Because article IX does not include non-monetary asset transfers within the scope of "appropriations," it provides further proof that non-monetary asset transfers are not subject to the governor's appropriations veto under article II of the Alaska Constitution.

That the governor's appropriations veto under article II is limited to money bills is also suggested by article VIII, which grants broad powers over land to the legislature. A number of sections of article VIII grant the legislature a land-disposal power that is not consistent with the enhanced appropriations veto power claimed by the governor. Article

VIII, section 2 establishes the legislature's general power to manage and control Alaska's land, stating that "[t]he legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people." [33] Section 9 establishes the legislature's power to "provide for the sale or grant of state lands, or interests therein, and establish sales procedures." [34] Section 12 provides that the legislature can transfer non-monetary state assets by law through the creation of mineral leases and permits.[35] These sections of article VIII establish the legislature's power to dispose of and manage state land and the minerals contained within that land. The existence of this power is inconsistent with the governor's argument that the disposal of state lands is subject to the enhanced veto reserved for appropriations. Article VIII in its entirety suggests that the framers intended to provide the legislature with control over state lands subject only to the governor's less restrictive, non-appropriations veto.

Because the minutes of the Constitutional Convention and articles VIII and IX of the Alaska Constitution mandate an exclusively monetary concept of "appropriations," we hold that only monetary asset transfers constitute "appropriations" under article II of the Alaska Constitution. Therefore, S.B. 7's transfer of land to the university is not subject to the governor's enhanced appropriations veto.

and anticipated income of all departments, offices, and agencies of the State. The governor, at the same time, shall submit a general appropriation bill to authorize the proposed expenditures, and a bill or bills covering recommendations in the budget for new or additional revenues.

**32.** Alaska Const. art. IX, § 16 provides in relevant part that:

Except for appropriations for Alaska permanent fund dividends, appropriations of revenue bond proceeds, appropriations required to pay the principal and interest on general obligation bonds, and appropriations of money received from a non-State source in trust for a specific purpose, including revenues of a public enterprise or public corporation of the State that

issues revenue bonds, appropriations from the treasury made for a fiscal year shall not exceed $2,500,000,000 by more than the cumulative change, derived from federal indices as prescribed by law, in population and inflation since July 1, 1981.

**33.** Alaska Const. art. VIII, § 2.

**34.** Alaska Const. art. VIII, § 9.

**35.** Alaska Const. art. VIII, § 12 provides, in relevant part:

Leases and permits giving the exclusive right of exploration for these minerals for specific periods and areas ... may be authorized by law.

### B. Senate Bill 7's Provisions Concerning the Income from Transferred Land Do Not Provide the University with a Sufficiently Definite Sum of Money To Constitute an Appropriation.

The legislative council argues that the superior court erred in holding that the portions of S.B. 7 governing income produced by the transferred lands make S.B. 7 an appropriations bill. It contends that S.B. 7 does not contain any of the elements necessary to qualify as an appropriation under articles II and IX of the Alaska Constitution. The legislative council proposes that an appropriation is defined by three essential elements and argues that S.B. 7 meets none of them: It does not authorize a government expenditure, it does not sufficiently state a purpose for the alleged expenditure, and it does not set aside a certain sum of money. The governor responds that S.B. 7 must be considered an appropriation because it restricts the income derived from the transferred land to the university.[36] Because we agree with the legislative council that appropriations must set aside a certain sum of money and that S.B. 7 does not specifically appropriate a certain sum of money to the university, we do not consider the other two prongs of this proposed test.

We have previously defined an "appropriation" as " 'the setting aside from the public revenue of a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other.' "[37] Subsequently, in *Knowles II* we defined an item in an appropriations bill as " 'a sum of money dedicated to a particular purpose.' "[38] While neither of the above cases specifically dealt with the "sum certain" requirement, they both recognized that an act must authorize the expenditure of an ascertainable sum of money in order to qualify as an appropriation. The governor's item and general appropriation vetoes apply to items and bills that provide state officials with enough of a description to ascertain the transfer of a specific amount of money at a specific point in time.[39] In this case, the income that S.B. 7 seeks to provide for the university is so uncertain, due to its dependence on the university's selection and management of the land, that it may never materialize or it may take many years to do so. Because the provisions of S.B. 7 concerning income derived from transferred lands are so indefinite, we hold that those portions of S.B. 7 are not appropriations subject to the governor's enhanced appropriations veto.

### C. We Decline To Address Whether S.B. 7 Is an Unconstitutional Dedication Under Article IX, Section 7 of the Alaska Constitution.

The legislative council argues that the superior court determined that S.B. 7 was an unconstitutional dedication under article IX, section 7 of the Alaska Constitution.[40] While

---

**36.** C.S.S.B. 7 amends AS 14.40.400(a) to read (underlined text is new):

> The Board of Regents shall establish a separate endowment trust fund in which shall be held in trust in perpetuity *all*
> ....
> (2) *net income derived from the sale, lease, or management of the land selected by and conveyed to the University of Alaska under AS 14.40.365* [.] ...

**37.** *Thomas v. Rosen*, 569 P.2d 793, 796 (Alaska 1977) (quoting *State ex rel. Finnegan v. Dammann*, 220 Wis. 143, 264 N.W. 622, 624 (1936)).

**38.** 21 P.3d at 373.

**39.** The requirement that the legislature sufficiently describe monetary asset transfers exists so that the legislature cannot purposefully fail to include a sum certain in order to avoid the governor's appropriations veto. But the degree of specificity required is only that necessary to allow identification of the monies involved. For example, we have previously treated as an appropriation a bill containing language stating that "an amount equal to the unexpended and unobligated balance on June 30, 1997, of the fiscal year 1997 general fund receipts from the salmon marketing tax (AS 43.76.110), from the seafood marketing assessment (AS 16.51.120), and from the fishery resource landing tax (AS 43.77.011) is appropriated from the general fund to the Alaska Seafood Marketing Institute." *Id.* at 386, app. A.

**40.** Alaska Const. art. IX, § 7 states: "The proceeds of any state tax or license shall not be dedicated to any special purpose, except as provided in section 15 of this article or when re-

there is language in the superior court's decision that might be interpreted to address S.B. 7's constitutionality,[41] the superior court explicitly declined to address whether S.B. 7 was an unconstitutional dedication because the parties only contested whether S.B. 7 was an appropriation subject to the governor's enhanced veto. The conservation amici now argue that we should "bear in mind the Dedicated Funds Clause and the important policies underlying it." They also claim that they should be allowed to renew their motion to intervene upon remand to represent the position that S.B. 7 is an unconstitutional dedication. We agree.

■ We decline to address the question of whether S.B. 7 violates the constitutional prohibition on dedications because the matter was not fully litigated below. The superior court correctly declined to decide the dedication issue because the only question before the court was whether S.B. 7 is an appropriations bill. Because that is the only question presented by this appeal, we decline to address the dedication issue.[42]

## V. CONCLUSION

Because we hold that S.B. 7 was not an appropriation, we REVERSE the superior court's decision holding that the governor's enhanced appropriations veto applies to S.B. 7. We REMAND for consideration of the issue whether S.B. 7 is an unconstitutional dedication.[43]

quired by the federal government for state participation in federal programs. This provision shall not prohibit the continuance of any dedication for special purposes existing upon the date of ratification of this section by the people of Alaska."

41. The superior court stated that S.B. 7 "is not ... a simple land transfer bill. Rather, the bill explicitly removes land from the public domain and dedicates income from that land exclusively to the University in perpetuity." It further stated that "Senate Bill 7 results in a sum of money,

income from the land grant, being dedicated to a particular purpose, funding for the University[.]" *Legislative Council v. Knowles*, No. 1JU–00–1237 CI (Alaska Super., August 17, 2001).

42. *Earth Movers of Fairbanks, Inc. v. State, Dep't of Transp. and Pub. Facilities*, 824 P.2d 715, 718 (Alaska 1992).

43. On remand, the superior court should first rule on the motion of the conservation amici to intervene.