**Judy M. PRICE;  Paul H. Bratton, Jr., Appellants,**

v.

**Linda DAHL, Clerk, Matanuska–Susitna Borough, Appellee.**

No. S–6596.

Supreme Court of Alaska.

March 15, 1996.

---

Eric Smith, Anchorage, for Appellants.

Michael Gatti, Borough Attorney, Matanuska–Susitna Borough, Palmer, for Appellee.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

PER CURIAM.

### I.  INTRODUCTION

Appellants Price and Bratton filed an application for a petition to hold a referendum on the Matanuska–Susitna (Mat–Su) Borough's ordinance adopting the Chase Comprehensive Plan.  The Mat–Su clerk, Linda Dahl, rejected the petition.  The superior court upheld Dahl's decision, holding that Alaska's specific planning laws preempt the general right to a referendum.

On appeal, Price and Bratton contend that the trial court's decision was erroneous because the right to a referendum has not been preempted.  Dahl argues that it has been preempted.  In the alternative, Dahl claims that the subject matter of the referendum violates the Alaska constitution, and that the petition's attempt to hold the referendum only among residents of the Chase Comprehensive Plan area is improper.  Price and Bratton deny that anything is wrong with their proposed referendum.

We affirm the trial court's decision on the ground that the proposed referendum election could only be held on a borough-wide basis.

### II.  FACTS AND PROCEEDINGS

State law requires the Mat–Su Borough to adopt a comprehensive plan.  AS 29.40.030(b).  A comprehensive plan is a "compilation of policy statements, goals, standards, and maps for guiding the physical, social, and economic development" of the borough.  AS 29.40.030(a).  It serves as a "long-range policy guide for development of the [municipality] as a whole."  *Lazy Mountain Land Club v. Matanuska–Susitna,* 904 P.2d 373, 377 (Alaska 1995) (quoting Donald G. Hagman, *Urban Planning and Land Development Control Law* 42 (1971)).  Borough land use regulations are to be "in accordance" with the comprehensive plan.  AS 29.40.040(a).  Requiring zoning decisions to be in accord with the comprehensive plan "helps to 'guard against prejudice, arbitrary decision-making, and improper motives' by providing substantive standards against which to measure individual zoning decisions."  *Lazy Mountain,* 904 P.2d at 377–78 (quoting *South Anchorage Concerned Coalition, Inc. v. Coffey,* 862 P.2d 168, 174 (Alaska 1993)).  A comprehensive plan must be in place before borough zoning regulations can

be implemented. *Lazy Mountain*, 904 P.2d at 377–79. This requirement is not a barrier to pre-existing zoning regulations so long as they comply with the comprehensive plan. *Id.* at 379 n. 22.

In 1986 the Mat–Su Borough directed the planning commission to develop comprehensive plans for the borough on a community-by-community basis. One of the communities selected was the Chase area of the Mat–Su Borough. The planning commission in turn established a citizens' advisory committee on the Chase Comprehensive Plan (CCP). The citizens' committee recommended, among other things, that the CCP discourage the construction of roads. The appellants in this case, Price and Bratton, as well as a majority of the citizens' committee, apparently considered this policy goal vital to the preservation of the bush lifestyle Chase residents enjoy. However, the planning commission thought that the CCP should encourage the development of roads in the area on pre-existing rights of way. On October 19, 1993, the Mat–Su Borough assembly approved a CCP that included the goal of approving roads on already existing rights of way. Ordinance Serial No. 93–071(AM)(1).

On November 15, 1993, Price filed an application for a referendum petition with the Mat–Su Borough Clerk, Linda Dahl. The application sought a referendum on the CCP. Price and Bratton gathered signatures from twenty people residing in the area covered by the CCP. The application sought to have only CCP residents vote on the referendum.

The Acting Borough Clerk, Kristie L. Van-Gorder, rejected the application.[1] She found that the application was in improper form because it sought to conduct a referendum only in Chase, instead of borough-wide. She also believed that a planning matter could not be the subject of a referendum.

Price and Bratton filed suit against Dahl and requested a preliminary injunction. The trial court consolidated the request for a preliminary injunction with a trial on the merits. The parties filed cross-motions for summary judgment, and the court granted judgment for Dahl in April 1994. The superior court held that Alaska planning law supersedes the general power of referendum. It did not reach the issues of whether a land use ordinance could be the subject of a referendum, or whether Price and Bratton selected the proper pool of voters for the referendum. Price and Bratton filed a timely notice of appeal.

## III. *DISCUSSION*

*The Election Proposed in the Referendum Application Violates Alaska Law Because It Would Not Include All Voters in the Municipality* [2]

Signature requirements for local initiatives and referenda are provided in AS 29.26.130. Subsection (e) provides:

> If the ordinance or resolution that is the subject of an initiative or referendum petition affects only an area that is less than the entire area of the municipality, only voters residing in the affected area may sign the petition.

Price and Bratton argue that AS 29.26.130(e) requires the referendum on the CCP to be voted on solely by those living in the affected area. However, the text of the statute does not address the eligibility of voters. Subsection 130(e) only addresses signature requirements. The chapter on local initiatives and referenda is silent on the issue of who may vote in such elections. *See* AS 29.26.100–.190.

Voter eligibility for local elections is covered in AS 29.26.050. Only persons registered to vote at a residence address within the municipality may vote in municipal elections. AS 29.26.050. As to referendum and initiative measures,

---

**1.** AS 29.26.110 provides that the municipal clerk must certify a petition for a referendum within two weeks if the application is in proper form.

**2.** The trial court did not rule on this issue when it granted summary judgment. However, when affirming a grant of summary judgment, this court may base its ruling on grounds other than those advanced by the trial court. *Native Village of Eyak v. GC Contractors*, 658 P.2d 756 (Alaska 1983); *Sisters of Providence v. Municipality of Anchorage*, 672 P.2d 446, 448 n. 2 (Alaska 1983). We express no opinion on the constitutionality of the proposed referendum or its validity under the Alaska land use statutes.

(b) .... in order to vote for a candidate or on a ballot measure relating to a specific local election district or service area, a municipality may by ordinance require that a person be registered to vote ... at an address within the boundaries of that local election district or service area.

The statute provides a default rule that all municipal voters must be registered to vote in the municipality. AS 29.26.050(a). Municipalities themselves may impose the further requirement that voters on issues involving local election districts or service areas must be registered to vote within that district or area. AS 29.26.050(b). This rule is not at issue in this case, because AS 29.26.050(b) by its terms only applies to local election districts and service areas. The area covered by the CCP is neither, and Price and Bratton fail to argue otherwise.[3] Thus, residents of the entire municipality have the right to vote in a referendum or initiative on the CCP. Price and Bratton may have been correct in concluding that only CCP-area residents could sign their petition, but their application was flawed because it attempted to prevent people residing outside the CCP-area from voting.[4]

## IV. CONCLUSION

We hold that the application was properly rejected because it did not select the proper pool of voters for the proposed referendum election. The decision of the superior court is AFFIRMED.

MOORE, C.J., not participating.

---

**3.** We recently defined a service area as "a specific geographical area within which a municipal service is furnished by a borough." *North Kenai Peninsula Rd. Maintenance Serv. Area v. Kenai Peninsula Borough,* 850 P.2d 636, 639 (Alaska 1993). Local election districts may be established by municipalities wishing to apportion representation on other than an at-large basis. *See, e.g.,* AS 29.06.320 (requiring charters to define election districts when representatives are not elected on areawide basis); AS 29.20.070 (allowing local assemblies to elect members by election district).

**4.** Neither party has addressed the issue of whether Dahl had the legal right or duty to reject the *application* for a petition on the basis of its substantive validity or its call for a Chase-only election. *See* AS 29.26.110–.180. We have assumed, without deciding, that she had such a legal right or duty.