**Frank GRISWOLD, Appellant,**

v.

**CITY OF HOMER, Appellee.**

No. S–12226.

Supreme Court of Alaska.

June 20, 2008.

---

Frank Griswold, Homer, pro se.

Gordon J. Tans, Perkins Coie, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

After the Homer City Council passed an ordinance limiting the floor area of stores in three City of Homer zoning districts to between 20,000 and 45,000 square feet, Homer residents passed an initiative that increased the area to 66,000 square feet for all three zoning districts. Homer resident Frank Griswold sued the city and argued that the initiative was invalid for various reasons. The superior court upheld the initiative and granted summary judgment to the city. Griswold appeals, arguing that zoning is not a proper subject for an initiative. Because this zoning initiative impermissibly bypassed the Homer Advisory Planning Commission, and therefore exceeded the city council's own legislative power, we conclude that the initiative was invalid. We consequently remand for entry of judgment for Griswold.

## II. FACTS AND PROCEEDINGS

When Fred Meyer, Inc. publicly announced plans in late 2002 to build a 95,000–square–foot store in Homer, the city began an extensive review of its existing zoning code to determine whether it needed to alter

floor area limits for retail and wholesale stores. For two years, beginning in March 2003, the question was considered by a special task force, by the Homer Advisory Planning Commission, and by the Homer City Council in more than a dozen hearings. After analyzing issues including traffic impact, the ideal rate of development, landscaping, maintaining the local character of Homer, and protecting groundwater, the planning commission made a series of recommendations to the city council regarding the appropriate floor area for retail and wholesale stores.

While those hearings were still being conducted, Homer voters in March 2004 filed with the city clerk an initiative petition that proposed a "footprint area" of 66,000 square feet for retail and wholesale business buildings in the Central Business District, General Commercial 1 District, and General Commercial 2 District. On April 12, 2004, the city council passed Ordinance 04–11(A), which set building floor area limits of 35,000 square feet in the Central Business District, 20,000 to 45,000 square feet in the General Commercial 1 District, and 45,000 square feet in the General Commercial 2 District. On the same day, in response to the initiative petition, the city council scheduled an election on the initiative for June 15, 2004. The voters approved the initiative at the June 15 election; the initiative became effective on June 21, 2004 as Ordinance 04–18.

Stating that a change in the zoning code sections was "required to properly convey the will of the voters," and that an ordinance was "necessary to implement the will of the voters," in February 2005 the city council enacted Ordinance 05–02, adopting a maximum floor area of 66,000 square feet for retail and wholesale business buildings in the three affected zoning districts. Ordinance 05–02 amended Ordinance 04–11(A) to reflect the text of the initiative. Ordinance 05–02

also effectively defined "footprint area" as "floor area," meaning "the total area occupied by a building, taken on a horizontal plane at the main grade level, exclusive of steps and any accessory buildings."[1]

Frank Griswold challenged the initiative in the superior court, claiming among other things that the initiative process could not be used to amend the zoning code. The city prevailed on summary judgment.

Griswold appeals.

## III. DISCUSSION

### A. Standard of Review

■■■ We review a grant of summary judgment de novo.[2] We decide the questions of law presented on appeal from a grant of summary judgment by adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[3]

### B. The Initiative Was an Invalid Exercise of the City's Legislative Authority Because It Bypassed the Homer Advisory Planning Commission.

Griswold argues that the zoning initiative is invalid for several reasons. He contends, among other things, that the zoning authority delegated to the City of Homer requires it to pass only zoning ordinances that are consistent with the city's comprehensive plan. The city, citing *Citizens Coalition for Tort Reform v. McAlpine*,[4] responds that the voters' constitutional right to enact initiatives should be broadly construed to permit the voters to amend zoning laws. The city contends that because the city council has the power to enact zoning ordinances, the voters must have the same power.

■■■ The power to initiate cannot exceed the power to legislate.[5] To decide whether Homer voters could invoke the initiative pro-

---

1. Homer City Code (HCC) 21.32.208.

2. *Alaska Action Ctr., Inc. v. Municipality of Anchorage,* 84 P.3d 989, 991 (Alaska 2004).

3. *Id.*

4. *Citizens Coal. for Tort Reform v. McAlpine,* 810 P.2d 162 (Alaska 1991) (stating that people's constitutional right to initiate is broad and should be liberally construed).

5. *Municipality of Anchorage v. Frohne,* 568 P.2d 3, 8 (Alaska 1977) (citations omitted) ("[T]he subject of the initiative must constitute such legislation as the legislative body to which it is directed has the power to enact.").

cess to amend the City of Homer zoning code we must determine the extent of the city council's zoning power and the explicit and implicit limitations on that power. The city's zoning power flows from two sources: Alaska statutes providing for planning, platting, and land use regulation by local governments, and Kenai Peninsula Borough ordinances delegating zoning powers to cities within the borough.

We first review the statutory sources of that power. Alaska Statute 29.40.010 requires first and second class boroughs to provide for "planning, platting, and land use regulation on an areawide basis."[6] If a city within a borough consents by ordinance, the borough assembly may delegate any of its land use regulation powers to the city.[7] Alaska Statute 29.40.020(a) provides that the borough "shall establish a planning commission" and AS 29.40.020(b) provides that the planning commission "shall prepare and submit a proposed comprehensive plan in accordance with AS 29.40.030...."[8] Section .030 describes "a comprehensive plan" as "a compilation of policy statements, goals, standards, and maps for guiding the physical, social, and economic development, both private and public, of the first or second class borough."[9]

These statutes require "areawide" planning and creation of a comprehensive plan "for the systematic and organized development" of the community, and they implicitly recognize the importance of the planning commission and the comprehensive plan to the process of regulating land use.[10]

A planning commission has statutory responsibilities beyond drafting the comprehensive plan. Per AS 29.40.020(b)(2), the commission must also "review, recommend, and administer measures necessary to implement the comprehensive plan, including measures provided under AS 29.40.040."[11] Because "zoning regulations" are one of the

6. AS 29.40.010 provides:
 (a) A first or second class borough shall provide for planning, platting, and land use regulation on an areawide basis.
 (b) If a city in a borough consents by ordinance, the assembly may by ordinance delegate any of its powers and duties under this chapter to the city. The assembly may by ordinance, without first obtaining consent of the city, revoke any power or duty delegated under this section.

7. AS 29.40.010(b).

8. AS 29.40.020 provides:
 (a) Each first and second class borough shall establish a planning commission consisting of five residents unless a greater number is required by ordinance. Commission membership shall be apportioned so that the number of members from home rule and first class cities reflects the proportion of borough population residing in home rule and first class cities located in the borough. A member shall be appointed by the borough mayor for a term of three years subject to confirmation by the assembly, except that a member from a home rule or first class city shall be selected from a list of recommendations submitted by the council....
 (b) In addition to the duties prescribed by ordinance, the planning commission shall
 (1) prepare and submit to the assembly a proposed comprehensive plan in accordance with AS 29.40.030 for the systematic and organized development of the borough;

 (2) review, recommend, and administer measures necessary to implement the comprehensive plan, including measures provided under AS 29.40.040.

9. AS 29.40.030 provides:
 (a) The comprehensive plan is a compilation of policy statements, goals, standards, and maps for guiding the physical, social, and economic development, both private and public, of the first or second class borough, and may include, but is not limited to, the following:
 (1) statements of policies, goals, and standards;
 (2) a land use plan;
 (3) a community facilities plan;
 (4) a transportation plan; and
 (5) recommendations for implementation of the comprehensive plan.
 (b) With the recommendations of the planning commission, the assembly shall adopt by ordinance a comprehensive plan. The assembly shall, after receiving the recommendations of the planning commission, periodically undertake an overall review of the comprehensive plan and update the plan as necessary.

10. AS 29.40.010(a) ("areawide basis"); AS 29.40.020(a) ("borough shall establish a planning commission"); AS 29.40.020(b)(1) (requiring planning commission to prepare and submit a "proposed comprehensive plan ... for the systematic and organized development of the borough").

11. AS 29.40.020(b)(2).

"measures provided under AS 29.40.040,"[12] subsection .020(b)(2) requires the planning commission to "review, recommend, and administer" zoning regulations "necessary to implement the comprehensive plan." The assembly by ordinance "shall adopt or amend" land use provisions "[i]n accordance with a comprehensive plan" and "in order to implement the comprehensive plan."[13]

The statutes therefore expressly require that the planning commission have an active role in creating a comprehensive plan for "systematic and organized" local development, reviewing and recommending zoning regulations, and adopting measures "necessary to implement the comprehensive plan."[14] The statutes implicitly recognize that the planning commission plays an important part in the formation and amendment of local land use regulations by providing assistance to the borough (or city) to ensure that development proceeds in a "systematic and organized" manner.[15]

We now consider the second source of the city's power to regulate land use. The Kenai Peninsula Borough, by ordinance, delegated the zoning power to cities willing to accept the delegation, and also delegated to those cities power to establish a planning commission "to hear all requests for amendments to zoning codes."[16] The same ordinance also authorized a city with this delegated zoning power to "exercise all zoning powers within the city to the extent that such powers have been granted to the borough by statute."[17] The Kenai Peninsula Borough therefore delegated the power to regulate zoning to the City of Homer, which by ordinance requested the delegation. The city, standing in the place of the borough, was therefore obligated to establish a zoning commission, draft a comprehensive plan, and comply with state law governing planning and land use regulation. And, most relevant here, KPBC 21.01.020(B) delegated to the city council "the power to establish a planning commission to hear all requests for amendments to zoning codes."

The City of Homer created the Homer Advisory Planning Commission, in accordance with AS 29.40.020 and KPBC 21.01.020.[18] The city charged the commission with holding hearings and preparing recommendations for the city council when a zoning amendment is proposed.[19] In addition, the commission may propose amendments to the zoning code.[20]

The city council also has the power to propose amendments to zoning ordinances,[21]

12. AS 29.40.040(a)(1).

13. AS 29.40.040(a). AS 29.40.040 provides in pertinent part:

(a) In accordance with a comprehensive plan adopted under AS 29.40.030 and in order to implement the plan, the assembly by ordinance shall adopt or amend provisions governing the use and occupancy of land that may include, but are not limited to,
 (1) zoning regulations restricting the use of land and improvements by geographic districts;
 (2) land use permit requirements designed to encourage or discourage specified uses and construction of specified structures, or to minimize unfavorable effects of uses and the construction of structures;
 (3) measures to further the goals and objectives of the comprehensive plan.

14. AS 29.40.020(b)(1), (2); AS 29.40.040(d)(1).

15. AS 29.40.020(b)(1).

16. Kenai Peninsula Borough Code (KPBC) 21.01.020 provides in pertinent part:

(A) If a city by resolution of the council requests the assembly to delegate the power to provide zoning regulation within the city, the assembly shall delegate the power. A city to which the zoning authority is delegated may exercise all zoning powers within the city to the extent that such powers have been granted to the borough by statute, except those powers reserved to the borough by Section 21.01.010.
(B) *The city council is delegated the power to establish a planning commission to hear all requests for amendments to zoning codes,* or for variances, conditional use permits, contract rezoning[,] or to hear all other matters coming under the zoning ordinances enacted by the city. . . .
(Emphasis added.)

17. KPBC 21.01.020(A).

18. HCC 1.76.010(a).

19. HCC 21.70.020(c)(1).

20. HCC 21.70.010(a)(2).

21. HCC 21.70.010(a)(1).

as does "any person," [22] presumably meaning any Homer resident.

The relevant state statutes are clear. A borough or a city, having the power possessed by the City of Homer, cannot pass or amend a zoning ordinance without involving its planning commission in reviewing that ordinance. [23] This review includes considering whether a proposed ordinance is consistent with the comprehensive plan. [24] A borough assembly or city council may eventually choose not to follow the recommendations of the planning commission, but the statutes preclude bypassing the planning commission altogether.

Likewise, KPBC 21.01.020(B) gives the city council power to establish a planning commission to hear all requests for amendments to zoning codes. [25] This provision can be read as giving the planning commission the primary authority for initial consideration of zoning amendments. At the very least, this provision confirms the commission's role in considering proposed amendments to an existing zoning code that was itself adopted "[i]n accordance with a comprehensive plan . . . and in order to implement the plan . . . ." [26]

■ It is for this reason that zoning by initiative is invalid. The Homer City Council does not have the power to pass piecemeal zoning amendments without at least giving the Homer Advisory Planning Commission opportunity to review the proposals and make recommendations. Therefore, voters, who have no obligation to consider the views of the planning commission or be informed by its expertise, cannot use the initiative process to eliminate the planning commission's role in "areawide" land use planning and regulation, and thus potentially undermine the comprehensive plan for "systematic and organized" local development. [27]

22. HCC 21.70.010(b).

23. AS 29.40.020.

24. AS 29.40.030(b), .020(b)(2), .040(a).

25. KPBC 21.01.020(B).

26. AS 29.40.040(a).

The city contends that we must determine "[w]hether the Constitution and statutes preempt the use of the initiative for zoning ordinances." But, because the initiative was local, and not statewide, the power to initiate here was directly derived from AS 29.26.100, not article XI, section 1 of the Alaska Constitution. [28] And we conclude that zoning by initiative exceeds the scope of the legislative power granted by the legislature to the city council.

The city also contends that initiatives are not "governed by all the procedures ordinarily applicable to the enactment of city council ordinances." The city seems to argue that because notice and a hearing are required for a city council ordinance but not an initiative, it is acceptable for initiatives to bypass certain procedural requirements. But as seen above, the participation of the city's planning commission in the zoning process required by the legislature and the borough is more than just a mere procedural requirement.

The facts in this case illustrate how the initiative process limits or even eliminates the intended role of a planning commission. The planning commission spent many months considering appropriate floor area limits for business buildings in the affected zoning districts. The city council charged the commission with "develop[ing] standards for addressing large retail and wholesale development" and "recommend[ing] a size cap for large retail and wholesale development." To that end, the commission, city council, and a task force conducted more than a dozen hearings. The commission reviewed recommendations from the Large Structure Impact Task Force and the Chamber of Commerce Legislative Committee; researched necessary improvements to lighting, landscaping, stormwater drainage, and parking; and developed standards for traffic and economic impact analyses. The commission explicitly applied the standards found in

27. *See supra* n. 10.

28. AS 29.26.100 provides: "The powers of initiative and referendum are reserved to the residents of municipalities, except the powers do not extend to matters restricted by art. XI, § 7 of the state constitution."

the Homer Comprehensive Plan in its decision-making process. And before the initiative election, the city council considered the planning commission's recommendations and amended the zoning code, adopting different floor area limitations for the subject zoning districts. The voters then approved the initiative and adopted a single, and greater, limitation for all three districts before the commission completed its findings.

Given the public hearings that were being conducted and the opportunity for public debate, it is logical to ask whether the voters had, in effect, the same access as the council to the recommendations of the planning commission, and thus whether the initiative process did not actually bypass the planning commission. The council was required to consider the commission's recommendations, even if it ultimately rejected them. The council acts as a collegial and public body; it is a matter of public record whether it addresses the commission's recommendations and attempts to reconcile proposed amendments with the comprehensive plan and state and borough ordinances. That is not at all the process an initiative election follows. Just as the council cannot choose to completely ignore the recommendations in adopting a zoning amendment, the voters cannot pass an initiative in which the commission's recommendations play no formal, or perhaps even informal, role at all.

The commission does more than simply give notice of hearings and allow the public to be heard on the subject of zoning ordinances. If a zoning amendment is proposed, the commission's role is to analyze the impact of the proposed changes in light of the city's development goals as stated in the comprehensive plan, and to suggest other changes that should accompany the proposed zoning amendment.[29] Even if a city council chooses to disregard the recommendations of the city planning commission, its decision has been informed by the planning commission's consideration of the potential social and regulatory costs and benefits of the proposed amendment. The city's planning commission's role is not merely "procedural," but is substantive. Homer voters therefore could not bypass the commission by using the initiative power.

The city argues that if an initiative fails to comply with the comprehensive plan, a court could review it post-enactment. Because the dispute here turns not on consistency with the comprehensive plan, but on the involvement of the planning commission in the amendment process, we are unconvinced by this argument.

The city argues that the ultimate issue here is "whether the Alaska Constitution or statutes do or do not delegate the power to enact zoning regulations exclusively to the city council." The city argues the people's power to enact zoning measure by initiative is precluded if the constitution and statutes delegate the power to zone exclusively to the city council. The city implies that for Griswold to prevail we must find that the city council exclusively has the power to zone. We disagree, and instead conclude that Griswold prevails because zoning by initiative eliminates the planning commission's role both specified and implied in state statutes and borough ordinances.[30] Even if the pow-

---

**29.** AS 29.40.040(a)(1); AS 29.40.020(b)(2). *Cf.* KPBC 21.01.020(B).

**30.** Both parties cite cases from other jurisdictions that either reject or approve zoning by initiative. *See, e.g., Kaiser Hawaii Kai Dev. Co. v. City & County of Honolulu,* 70 Haw. 480, 777 P.2d 244, 247 (1989) (holding that "[z]oning by initiative is inconsistent with the goal of long range comprehensive planning" and was not intended by legislature); *see also Garvin v. Ninth Judicial Dist. Court,* 118 Nev. 749, 59 P.3d 1180, 1190 (2002) (holding that "[if] a city council can enact zoning legislation, the county and city voters can do the same by initiative"). The only cited case that deals with the scope of the delegated power is *Transamerica Title Ins. Co. v. City*

*of Tucson,* 157 Ariz. 346, 757 P.2d 1055, 1059 (1988) ("The power to zone is part of the police power and may be delegated by the State, but the subordinate governmental unit has no greater power than that which is delegated."). *Transamerica* supports the views we express in this case. In *Transamerica* the Arizona Supreme Court adhered to a prior holding "that 'zoning law is exempted from the initiative process,' in order to prevent private citizens from usurping the governing body's delegated power and from circumventing the notice and hearing requirements of the zoning statute." *Id.* at 1058. The Arizona court noted that its holding in the case on which it relied was "in harmony with the law

er to zone was exclusively and ultimately delegated to the city council, the initiative process prevents the planning commission from exercising the review and recommendation power clearly delegated to it.

 Finally, we consider the validity of Ordinance 05–02. The city argues that because Griswold failed to adequately brief his request to strike down Ordinance 05–02, that ordinance should not be invalidated.

Griswold preserved the issue below. His complaint asked the superior court to "enter an injunction preventing [the initiative's] enforcement or the enforcement of any other ordinance adopted or enacted as a result of this illegal action." Summary judgment was granted in favor of the city on that cause of action before the city council enacted Ordinance 05–02.

Griswold adequately argues on appeal that Ordinance 05–02 would not have been enacted but for passage of the initiative. The "whereas" clauses of Ordinance 05–02 seem to establish that the only purpose of the ordinance was "to implement the will of the voters." The ordinance gives no indication that the council was giving independent consideration to the planning commission's recommendations or that it was considering the zoning amendment on its own merits in light of the comprehensive plan. We are consequently persuaded that because the initiative is invalid, the only legislative purpose for passing Ordinance 05–02 is now absent; Ordinance 05–02 is therefore also invalid.

## IV. CONCLUSION

We REVERSE the superior court's grant of summary judgment and REMAND for entry of judgment for Griswold.

in the vast majority of other jurisdictions, which prohibits zoning by initiative." *Id.* at 1059.

1. Homer City Code 4.60.010 makes this provision applicable to elections in the City of Homer. It states: "The provisions of Alaska Statute 29.26 Article 2, relating to Initiative and Referendum are incorporated into this chapter as if fully set out."

2. AS 29.26.110(a) provides in relevant part:

CARPENETI, Justice, dissenting.

BRYNER, Justice, not participating.

CARPENETI, Justice, dissenting.

Because the initiative power gives voters the ability to legislate without being subject to the restrictions applicable to other legislative bodies, I cannot agree that the procedural requirements applicable to the Homer City Council apply to a voter initiative that involves a zoning ordinance. Therefore, I respectfully dissent.

The court reasons that Homer voters' power to initiate is limited by the Homer City Council's power to legislate, and therefore voters must necessarily follow the same procedures as the city council. The court effectively holds that voters step into the shoes of the city council when attempting to initiate an ordinance that involves zoning laws, and therefore the initiative must be reviewed by the planning commission before the voters may pass it. There are four reasons I believe the court's reasoning is flawed.

First, and most importantly, under the Alaska Statutes and the Alaska Constitution the voter initiative is intended to be a *sui generis* means of legislating that is not subject to the procedures applicable to regular lawmaking. Alaska Statute 29.26.100 grants municipal voters the power to initiate legislation. It provides that "[t]he powers of initiative and referendum are reserved to the residents of municipalities, except the powers do not extend to matters restricted by article XI, section 7 of the state constitution."[1] There are no other limitations on the voters' power to initiate that are relevant to this case. The process for exercising the initiative at the municipal level is fairly straightforward. A proposed initiative is first reviewed by the municipal clerk to determine that it meets certain substantive requirements.[2] The initiative's sponsors must then

[T]he clerk shall certify the application if the clerk finds that it is in proper form and, for an initiative petition, that the matter
(1) is not restricted by AS 29.26.100;
(2) includes only a single subject;
(3) relates to a legislative rather than to an administrative matter; and
(4) would be enforceable as a matter of law.

gather the requisite number of signatures to support the initiative petition.[3] Where both these conditions are met, the initiative is to be submitted to the voters[4] and "[i]f a majority vote favors the [initiated] ordinance or resolution, it becomes effective upon certification of the election, unless a different effective date is provided in the ordinance or resolution."[5] .Similarly, the Alaska Constitution requires that statewide initiatives be subject to a technical and subject matter review[6] and provides that an initiative will be enacted "[i]f a majority of the votes cast on the proposition favor its adoption...."[7]

The Alaska Constitution also makes clear that the procedural requirements for enacting an initiative are different from the procedures applicable to the regular legislative process. In order for the state legislature to pass a bill, the bill must go through at least "three readings in each house on three separate days, except that any bill may be advanced from second to third reading on the same day by concurrence of three-fourths of the house considering it" and be approved by "an affirmative vote of a majority of the membership of each house."[8] Unless the governor vetoes the bill within fifteen days after its passage, it will become law.[9]

The differences between the regular legislative process and the procedures for statewide initiatives demonstrate that the framers of our constitution envisioned a separate, simplified process for initiative elections, one not generally subject to the constraints imposed on the legislature. The special treatment afforded to the initiative process stems from the fact that the initiative is a form of direct democracy. As the Supreme Court of California has explained, "[t]he original proponents of the initiative and referendum sought to give the electorate the ability to govern directly by majority rule: this was to be true democracy as distinguished from representative democracy."[10] That court has also held that a right of such importance should be "jealously guard[ed]."[11]

By importing requirements applicable to a different legislative body, the court today does exactly the opposite. Its approach not only ignores the fact that initiative elections stand apart from the traditional legislative process, but also weakens voters' ability to participate directly in the affairs of the city in which they live. In *Brooks v. Wright*[12] we stated that the constitutional framers "chose to include the initiative process as a lawmaking tool with full knowledge of the risks inherent to direct democracy."[13] Today's decision ignores *Brooks's* wisdom.

Second, the court overlooks that the legislature has imposed explicit subject matter prohibitions on municipal initiatives and has declined to include zoning among those prohibitions. Alaska Statute 29.26.100, in

---

3. AS 29.26.130.

4. AS 29.26.170.

5. AS 29.26.170(d).

6. *See* Alaska Const. art. XI, § 2.

7. Article XI, section 6 of the Alaska Constitution provides:

If a majority of the votes cast on the proposition favor its adoption, the initiated measure is enacted. If a majority of the votes cast on the proposition favor the rejection of an act referred, it is rejected.... An initiated law becomes effective ninety days after certification, is not subject to veto, and may not be repealed by the legislature within two years of its effective date. It may be amended at any time.... Additional procedures for the initiative and referendum may be prescribed by law.

8. Alaska Const. art. II, § 14.

9. Alaska Const. art. II, § 17. If the governor exercises a veto, a bill may become law if the legislature overrides the governor's veto pursuant to the requirements of article II, section 16 of the Alaska Constitution.

10. *Citizens Against Rent Control v. City of Berkeley*, 27 Cal.3d 819, 826, 167 Cal.Rptr. 84, 614 P.2d 742 (1980), *rev'd on other grounds, Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley*, 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981); *see also McKee v. City of Louisville*, 200 Colo. 525, 616 P.2d 969, 972 (1980) (describing power of initiative as "a fundamental right at the very core of our representative government").

11. *DeVita v. County of Napa*, 9 Cal.4th 763, 776, 38 Cal.Rptr.2d 699, 889 P.2d 1019 (1995) (citation omitted).

12. 971 P.2d 1025 (Alaska 1999).

13. *Id.* at 1029.

preserving the powers of initiative and referendum to residents of municipalities, incorporates the limitations that article XI, section 7 of the Alaska Constitution[14] imposes upon those powers. That constitutional section lists five matters that may not be the subject of an initiative: (1) dedication of revenues; (2) appropriations; (3) creation of courts; (4) changing of court rules or jurisdictions; or (5) local or special legislation.[15] If the legislature intended to prohibit zoning by initiative, it could easily have included zoning among the prohibited subject matters. That the legislature did not employ this simple and direct means to prohibit zoning by initiative strongly suggests that it did not intend to accomplish the same result through the roundabout means the court today attributes to it.

Third, the court bases its decision to prohibit zoning by initiative on the concern that allowing zoning by initiative would undermine comprehensive zoning.[16] But zoning ordinances, whether they are enacted by the voters or by the city council, are subject to post-enactment review. We explained in *Brooks* that "[c]oncerned parties can ... bring a post-election substantive challenge to

what they may believe is an ill-advised law."[17] In *Price v. Dahl*[18] we suggested that an ordinance could be challenged on the grounds that it is inconsistent with the comprehensive plan, stating, "[b]orough land use regulations are to be 'in accordance' with the comprehensive plan."[19] Thus, I believe the initiated ordinance was subject to a post-enactment challenge on the grounds that it failed to comply with Homer's comprehensive plan.

Finally, the court's decision conflicts with well-reasoned holdings from other states that have addressed zoning by initiative. California has definitively resolved the issue before us today in favor of allowing zoning by initiative. As the California Supreme Court succinctly explained, "[p]rocedural requirements which govern [City] Council action ... generally do not apply to initiatives, any more than the provisions of the initiative law govern the enactment of ordinances in council."[20] The Nevada Supreme Court similarly concluded that voters could enact zoning laws through the initiative process without following the procedures applicable to the city council attempting to enact the same ordi-

**14.** This section provides in full:

> The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, or enact local or special legislation. The referendum shall not be applied to dedications of revenue, to appropriations, to local or special legislation, or to laws necessary for the immediate preservation of the public peace, health, or safety.

**15.** The only prohibited subject matter listed in article XI into which the initiative ordinance could potentially fall is "local or special legislation." Because the districts affected were all commercial and the initiative appears to have been intended to promote commercial development of those areas, I would hold it does not constitute local or special legislation. *See Boucher v. Engstrom*, 528 P.2d 456, 463 (Alaska 1974) ("[Classifications based upon population or territorial differences] will be sustained where founded upon a rational difference of situation or condition existing in the objects upon which it rests, and where there is a reasonable basis for the classification in view of the objects and purposes to be accomplished.") (citations omitted), *partially overruled on other grounds, McAlpine v. Univ. of Alaska*, 762 P.2d 81, 85 (Alaska 1988).

Article XII, section 11 of the Alaska Constitution creates a catch-all restriction that prohibits the initiative from being used where it would be "clearly inapplicable," which this court has interpreted as applying only where "even 55 idiots would agree" that the subject matter was inapplicable to the initiative process. *Brooks*, 971 P.2d at 1028 (citation omitted). However, AS 29.26.100 does not incorporate this prohibition, and thus the "clearly inapplicable" restriction may not apply to municipal elections.

**16.** Opinion at 563.

**17.** 971 P.2d at 1030.

**18.** 912 P.2d 541 (Alaska 1996).

**19.** *Id.* at 542 (citing AS 29.40.040(a), which provides that zoning ordinances shall be adopted "in order to implement the [comprehensive] plan").

**20.** *Assoc. Home Builders, Inc. v. City of Livermore*, 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473, 479 (1976) (citation omitted); *accord DeVita v. County of Napa*, 9 Cal.4th 763, 38 Cal.Rptr.2d 699, 889 P.2d 1019, 1037–38 (1995) (allowing initiative to amend Napa's general plan despite failure to comply with procedures county planning agency must follow to enact amendment).

nance.[21] In both cases special procedures applied to the enactment of zoning laws by the local government bodies, but the courts nevertheless recognized that subjecting voter initiatives to those procedures would impermissibly restrict the voters' initiative powers.

In sum, the initiative process is unique. When exercising the initiative power, municipal voters do not simply step into the shoes of the legislative body they are bypassing, as the court today assumes. Instead, voters in an initiative election are participating in a process that is separate from the regular means used for legislating. Because the initiative process is intended to be separate from the procedures that the Homer City Council must follow when passing a zoning ordinance, the initiative ordinance in this case should not be subject to review by the Homer Advisory Planning Commission. I would hold that the initiated ordinance does not violate any of the subject matter restrictions imposed by article XI, section 7 of the Alaska Constitution (and made applicable to municipal elections through AS 29.26.100 and to elections in Homer through HCC 4.60.010), and I therefore would affirm the superior court's grant of summary judgment to the City of Homer.

---

**21.** *Garvin v. Dist. Court,* 118 Nev. 749, 59 P.3d 1180, 1190 (2002).