Carl **WHITSON**, Individually, and as Officer, Agent or Employee of the Libertarian Party, Appellant,

v.

**ANCHORAGE**, a Municipal Corporation, Appellee.

**ANCHORAGE**, a Municipal Corporation, Cross-Appellant,

v.

Carl **WHITSON**, Individually and as Officer, Agent or Employee of the Libertarian Party, Cross-Appellee.

Nos. 4254, 4267.

Supreme Court of Alaska.

March 28, 1980.

---

George Trefry, Holland & Trefry, Anchorage, for appellant/cross-appellee.

Theodore D. Berns, Municipal Atty., Anchorage, for appellee/cross-appellant.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

The question on appeal is whether a proposed amendment to the Anchorage Municipal Charter submitted by way of initiative petition was properly removed from the ballot.

The essential facts are not in dispute. In December of 1977, Carl Whitson presented an initiative petition with the requisite number of signatures to the clerk's office of the Municipality of Anchorage for inclusion on the ballot at the next regular Municipal election. The next election was scheduled for the fall of 1978. The petition proposed amending the Anchorage Municipal Charter by adding the following article:

"Section 14.10(e). Any new tax and any increase in any tax rate must be ratified by a majority of those voting on the question at a regular or special election."

After certifying the sufficiency of the signatures accompanying the petition,[1] the Municipal clerk referred the initiative to the Municipal Attorney's office for a determination of its legal validity. The Munici-

---

1. The certification process is spelled out in § 2.50.050 of the Anchorage Municipal Code (hereinafter AMC). AMC § 2.50.040 sets forth the requirements for number and sufficiency of signatures accompanying the petition. These sections of AMC reflect the procedures specified in AS 29.28.070 and AS 29.28.073.

pal Attorney apparently concluded that the proposed initiative called for action by the municipality contrary to law and that if the proposed amendment were enacted, it would be a nullity.

In January of 1978 the municipality filed a complaint for declaratory judgment seeking to have the proposed initiative declared "unlawful, unconstitutional and void, and [that it] should not be placed before the voters." Both parties moved for summary judgment. In August of 1978 the superior court granted summary judgment to the municipality and ordered the initiative proposition removed from the ballot. From this decision, Whitson appeals.

The grant of summary judgment below was based on the court's conclusion that "the initiative, by its words, is contrary to AS 29.53.055 and is unconstitutional." Relying on *Municipality of Anchorage v. Frohne*, 568 P.2d 3, 8 (Alaska 1977), the court reasoned that if the municipality, in its legislative capacity, is prohibited from enacting a limitation on taxes to pay bonds, then the people, acting through the initiative, in their legislative capacity, are similarly precluded.

Article X, § 11 of the Alaska Constitution provides: "A home rule borough or city may exercise all legislative powers not prohibited by law or charter." AS 29.13.100 limits home rule powers[2] as follows:

"Only the following provisions of this title apply to home rule municipalities as prohibitions on acting otherwise than as provided. They supersede existing and prohibit future home rule enactments which provide otherwise."

One of the enumerated provisions is AS 29.53.055 which states:

*No limitation on taxes to pay bonds.* The limitations provided for in § 45 or 50 of this chapter do not apply to taxes levied or pledged to pay or secure the payment of the principal and interest on bonds. Taxes to pay or secure the pay-

ment of principal and interest on bonds may be levied without limitation as to rate or amount, regardless of whether the bonds are in default or in danger of default.

This is the provision on which the superior court based its decision.

By cross-appeal the municipality argues that the proposed amendment would violate AS 29.53.170, which is included within the list of statutes which the municipality is barred from altering under AS 29.13.100. AS 29.53.170 provides:

*Tax levy and rate.* (a) The power granted to the assembly to assess, levy and collect a general property tax shall be exercised by means of general ordinances, but the rate of levy, the date of equalization and the date when taxes become delinquent shall be fixed by resolution.

(b) The assembly shall annually determine the rate of levy before June 15. By July 1 the tax collector shall mail tax statements setting out the levy, dates when taxes are payable and delinquent, and penalties and interest.

■ Plainly the proposed amendment would conflict with this provision. Under the amendment the assembly could not increase taxes without a ratification by referendum to the voters. This would contradict the command of AS 29.53.170, that taxes shall be levied by general ordinance, and it would violate AS 29.13.100, which prohibits the municipality from "acting otherwise than as provided" by AS 29.53.170. Thus, the amendment, had it been enacted, would have been unlawful. We hold that the proposed amendment was properly removed from the ballot.[3] *See Municipality of Anchorage v. Frohne*, 568 P.2d 3 (Alaska 1977).

■ Whitson argues that judicial review of this initiative prior to its submission to the voters was inappropriate because such review is contrary to the policy of judicial non-intervention in the legislative

---

2. The Municipality of Anchorage is a home-rule municipality.

3. In view of this we need not determine whether the proposed amendment conflicts with AS 29.53.055, quoted above, or with certain other statutory and constitutional provisions.

process. We do not agree. As a matter of judicial prudence, courts will refrain from passing on the constitutionality of proposed legislation. In keeping with this tradition, we have recognized that general contentions that the provisions of an initiative are unconstitutional are justiciable only after the initiative has been ·approved by the voters. *Boucher v. Engstrom*, 528 P.2d 456, 460 n. 13 (Alaska 1974). *Accord, Thomas v. Bailey*,[4] 595 P.2d 1, 2 (Alaska 1979); *Iman v. Bolin*, 98 Ariz. 358, 404 P.2d 705, 709 (1965); *Bowe v. Secretary of the Commonwealth*, 320 Mass. 230, 69 N.E.2d 115, 128 (1946). There are, however, recognized exceptions to this general principle of non-intervention in the case of voter initiatives.[5] Thus, we have reviewed an initiative measure prior to its consideration by the voters to ascertain whether it complies with the particular constitutional and statutory provisions regulating initiatives. *Municipality of Anchorage v. Frohne*, 568 P.2d 3 (Alaska 1977); *Boucher v. Engstrom*, 528 P.2d 456 (Alaska 1974); *Walters v. Cease*, 394 P.2d 670 (Alaska 1964); *Starr v. Hagglund*, 374 P.2d 316 (Alaska 1962). In the case of explicit constitutional prohibitions against proposed initiatives, we have noted that "[u]nless the courts had power to enforce those exclusions, they would be futile . . ." *Boucher*, 528 P.2d at 460, *quoting Bowe v. Secretary of the Commonwealth*, 69 N.E.2d at 128. Similarly, where, as here, a municipal charter amendment proposed by initiative is in clear conflict with a state statute, it would be useless "to allow the voters to give their time, thought and deliberation to the question of the desirability of the legislation as to which they are to cast their ballots, and thereafter, if their vote be in the affirmative, confront them with a judicial decree that their action was in vain

because of the reasons herein set forth." *Schultz v. City of Philadelphia*, 385 Pa. 79, 122 A.2d 279, 283 (Pa.1956). *See also, Otey v. Common Council*, 281 F.Supp. 264, 275–77 (E.D.Wis.1968); *State ex rel. Steen v. Murray*, 144 Mont. 61, 394 P.2d 761, 764–65 (Mont.1964). Thus we find that the superior court did not err in reviewing this initiative prior to its submission to the voters.

 It is also argued that removal of the proposed amendment from the ballot infringed Whitson's constitutional guarantee of free speech and access to a public forum for political debate. We know of no cases, and Whitson cites us to none, which would sustain such a claim on the facts of this case. In our opinion the argument is devoid of merit.

AFFIRMED.

---

4. In *Thomas*, we addressed the constitutionality of the challenged initiative after it had been approved by the electorate. The initiative had been challenged prior to its submission to the voters, but we determined that the difficult constitutional questions presented could not be properly decided on an expedited basis and ordered that the initiative be submitted to the electorate.

5. For purposes of this limited judicial review, legislation sought to be enacted via initiative must be distinguished from legislation pending before a legislative body. Underlying the principle of judicial non-interference in·the legislative process is the knowledge that a bill pending before the legislature may undergo many changes before it is finally enacted into law. An initiative measure, on the other hand, is in its final form once it is certified for placement on the ballot.