Wayne D. CARMONY, Appellant,

v.

Lonnie R. McKECHNIE, in her official capacity as Clerk of the Matanuska–Susitna Borough, Appellee.

No. S–13143.

Supreme Court of Alaska.

Oct. 9, 2009.

James L. Walker, Palmer, for Appellant.

Nicholas Spiropoulos, Borough Attorney, Palmer, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

The proponent of a municipal ballot initiative challenges a superior court ruling affirming the borough clerk's rejection of his petition application, as well as the court's award

of attorney's fees. The clerk and the superior court rejected the petition on grounds (1) that the proposed ordinance was not enforceable as a matter of law, (2) that it related to administrative rather than legislative matters, and (3) that the proposed measure was a referendum and the application failed to comply with the statutory and constitutional requirements for a referendum petition application. The proposed measure would have provided that all land use planning, regulation, and platting ordinances adopted by the borough assembly after July 1, 2007 would expire as of the next borough election unless approved by the voters. We affirm the rejection of the application. The proposed measure was not enforceable as a matter of law in that it would have bypassed mandatory planning commission review of land use ordinances and would have thwarted the state legislature's delegation of land use authority to the municipal assembly. Furthermore, because the plaintiff was advancing statutory rather than constitutional claims, he was not shielded from attorney's fees under AS 09.60.010(c)(2) and we therefore affirm the award of attorney's fees to the Borough.

## II. FACTS AND PROCEEDINGS

On July 31, 2007, Carmony and others submitted an Application for Initiative Petition to the Clerk of the Matanuska–Susitna Borough. The initiative, if approved by the voters, would have amended the Matanuska–Susitna Borough Code (MSB) by adding a new section MSB 1.25.011 as follows:

> Ordinances adopting or amending land use regulations, platting regulations, or land use plans ... adopted by the assembly after July 1, 2007, expire immediately upon certification ... of the results of the first regular or special borough election held after adoption of the ordinance by the assembly, or the effective date of this ordinance, whichever is later, unless approved

by a majority of the voters casting ballots in that election.

On August 13, 2007, the borough clerk rejected the application on three grounds: (1) the proposed ordinance was not enforceable as a matter of law, (2) it related to administrative rather than legislative matters, and (3) it was not an initiative but a referendum that failed to comply with the requirements for a referendum.

Carmony applied for judicial review by the superior court under AS29.26.110(b). Both parties moved for summary judgment. On March 24, 2008, Superior Court Judge Kari Kristiansen granted the borough clerk's motion for summary judgment, upholding the grounds cited in the borough's original rejection of the initiative, but rejecting the additional argument that the proposed legislation was also barred as special legislation.

The borough then moved for attorney's fees, and Carmony opposed this on the ground that he was a public interest litigant under AS 09.60.010(c)(2). The superior court found Carmony not entitled to public litigant status because his employer, Matanuska Electric Association (MEA), had an economic incentive to file the claim, and awarded attorney's fees of $1,633.50 to McKechnie. Carmony appealed both as to the rejection of the petition application and the award of attorney's fees.

## III. STANDARD OF REVIEW

◼ We review a grant of summary judgment de novo,[1] and review questions of law presented on appeal from a grant of summary judgment by adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[2]

◼ We generally do not review an initiative until it is enacted.[3] However, there are two exceptions to this rule: first, where the initiative is challenged on the basis that it does not comply with the state's constitutional and statutory provisions regulating initia-

---

1. *Griswold v. City of Homer*, 186 P.3d 558, 560 (Alaska 2008).

2. *Id.* (quoting *Alaska Action Ctr., Inc. v. Municipality of Anchorage*, 84 P.3d 989, 991 (Alaska 2004)).

3. *See Alaskans for Efficient Gov't, Inc. v. State*, 153 P.3d 296, 298 (Alaska 2007) (citing *State v. Trust the People*, 113 P.3d 613, 614 n. 1 (Alaska 2005)).

tives, and second, where the initiative is challenged as clearly unconstitutional or clearly unlawful.[4] When we review an initiative prior to submission to the people, we are mindful that "the requirements of the constitutional and statutory provisions pertaining to the use of initiatives should be liberally construed so that 'the people (are) permitted to vote and express their will on the proposed legislation.' "[5]

## IV. DISCUSSION

Alaska voters can enact or change state law through the powers of initiative and referendum established in article XI of the Alaska Constitution, and the legislature enacted AS 29.26.100 reserving to the residents of municipalities the power to use initiatives and referenda to enact or change local ordinances. Alaska Statute 29.26.110(a) requires that the municipal clerk certify an application for an initiative petition if it meets the following requirements:

(1) it is not restricted by AS 29.26.100;

(2) it includes only a single subject;

(3) it relates to legislative rather than to an administrative matter; and

(4) it would be enforceable as a matter of law.

Alaska Statute 29.26.100 applies to municipal initiatives the restrictions found in article XI, section 7 of the Alaska Constitution. That constitutional section provides:

The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, or enact local or special legislation. The referendum shall not be applied to dedications of revenue, to appropriations, to local or special legislation, or to laws necessary for the immediate preservation of the public peace, health, or safety.

## A. The Superior Court Did Not Err in Holding that the Proposal Was Unenforceable as a Matter of Law.

In rejecting the application, the borough clerk stated that the proposal could not be certified under AS 29.26.110(a)(4) because it was unenforceable as a matter of law:

[T]he ordinance proposed conflicts with Borough Code, Alaska Statute, and the Alaska State Constitution, as it appears to supercede and circumvent these laws in regard to the administrative processes for the passage of ordinances; referendum laws with the automatic [e]ffect of referendum elections for questions of planning, platting, and land use regulations ...; and mandates regarding the Borough's duty to provide for platting, planning, and land use regulations.... [T]his proposed ordinance frustrates the execution of the aforementioned provisions ... and therefore, it is preempted by the superior authority.

Judge Kristiansen agreed that the proposed measure was unenforceable as a matter of law, holding that "initiatives cannot be used to deprive a municipality of a power which state law specifically allows (and mandates) that it perform."

Alaska law restricts initiatives to matters that "would be enforceable as a matter of law."[6] We have held that "the subject of the initiative must constitute such legislation as the legislative body to which it is directed has the power to enact."[7] As noted above, we ordinarily will not review a proposed initiative prior to its approval by voters.[8] However, we do so here because a question is raised whether the initiative violates "explicit constitutional prohibitions" or whether the proposed initiative "is in clear conflict with a state statute."[9] We turn now to those questions.

---

4. *Id.*

5. *Boucher v. Engstrom*, 528 P.2d 456, 462 (Alaska 1974) (quoting *Cope v. Toronto*, 8 Utah 2d 255, 332 P.2d 977, 979–80 (1958)), *overruled on other grounds by McAlpine v. Univ. of Alaska*, 762 P.2d 81 (Alaska 1988).

6. AS 29.26.110(a)(4).

7. *Municipality of Anchorage v. Frohne*, 568 P.2d 3, 8 (Alaska 1977). *See also Griswold v. City of Homer*, 186 P.3d 558, 560 (Alaska 2008) ("The power to initiate cannot exceed the power to legislate.").

8. *See Whitson v. Anchorage*, 608 P.2d 759, 762 (Alaska 1980).

9. *Id.*

■ We held in *Griswold v. City of Homer*[10] that "zoning by initiative is invalid."[11] This was because the "[t]he power to initiate cannot exceed the power to legislate."[12] That is, the people could not enact a measure by initiative that was beyond the power of the borough assembly.[13] Under Alaska statutes, boroughs (or cities exercising power delegated by their borough) must establish a planning commission that prepares a comprehensive land use plan.[14] The planning commission is required to review, recommend, and administer measures "necessary to implement" that plan, and the local legislature is required to adopt land use provisions "[i]n accordance with" and "to implement" the comprehensive plan.[15] If it bypasses these procedures, zoning by initiative "exceeds the scope of the legislative power granted by the [state] legislature" to the local legislature and is thus unenforceable as a matter of law.[16]

*Griswold,* decided after the present case was appealed to this court, is applicable here. The proposed initiative would enact sweeping changes to present and future land use ordinances, including zoning, by imposing termination dates without any involvement by the planning commission or any consideration of consistency with the comprehensive plan. It would also impose termination dates on future amendments to the comprehensive plan without any planning commission input. It is thus clearly barred by our holding in *Griswold.*

Carmony argues that the initiative would not change the comprehensive plan without planning commission involvement because "the Borough Planning Commission would have advance notice of such termination and could recommend to the Assembly whether or not these elements should be re-enact-

ed...." While this may be true, it is not relevant, since the initiative would still set an expiration date for these plan provisions without any planning commission involvement. In addition, it would impose expiration dates on all other land use planning and regulation ordinances adopted by the assembly after July 1, 2007. This would significantly change a wide array of land use ordinances, including the kind of zoning ordinances explicitly addressed by *Griswold.*

The omission of the statutorily-mandated planning commission role is not the only reason the proposed initiative would be unenforceable as a matter of law. One of the limitations on a legislature is that it does not have the power "to divest itself and succeeding [legislatures] ... of powers vested in it by the general law for the benefit of its constituents; for this would be to repeal pro tanto the general law."[17] Here, the proposed initiative would enact a comprehensive divestiture of the local legislature's statutorily-mandated role in zoning and land use planning. Such a divestiture would be beyond the legislature's power, so it is also beyond the power of the initiative or referendum.

The proposed initiative would subject all land use enactments of the borough assembly to popular vote. For all practical purposes, the borough assembly would no longer be able to exercise the land use regulatory authority specifically delegated to it by state law. State law says that a borough assembly is required to enact a plan for the "systematic and organized development of the borough."[18] Such plans are to be "a compilation of policy statements, goals, standards, and maps for guiding the physical, social, and economic development, both public and pri-

**10.** 186 P.3d 558 (Alaska 2008).

**11.** *Id.* at 563.

**12.** *Id.* at 560.

**13.** *See Municipality of Anchorage v. Frohne,* 568 P.2d 3, 8 (Alaska 1977) ("[T]he subject of the initiative must constitute such legislation as the legislative body to which it is directed has the power to enact.").

**14.** *See Griswold,* 186 P.3d at 560–64 (discussing AS 29.40.010–.040).

**15.** *Id.* at 561–62 (quoting AS 29.40.040).

**16.** *Id.* at 563.

**17.** *Thompson v. Bd. of Trs. of City of Alameda,* 144 Cal. 281, 77 P. 951, 952 (App.1904); *see also* 82 C.J.S. *Statutes* § 9 (2008).

**18.** AS 29.40.020(b)(1).

vate," of the borough.[19]  If the proposed initiative were enacted by the borough assembly, the assembly would be divesting itself of the power delegated to it by state statutes, as it would make all long-range land use policy and planning impossible.

In *Whitson v. Anchorage,*[20] we addressed a similar attempt to use the initiative to divest a local legislature of its statutorily-mandated powers.  That case involved an initiative that would require that any new tax or tax rate increase in Anchorage be ratified by a majority of voters.[21]  State statutes specifically required that municipal taxes must be levied by general ordinance of the assembly.[22]  Under state law, this requirement was part of a set of requirements for home rule municipalities, such that the municipalities were prohibited from "acting otherwise than as provided."[23]  We held: "Plainly the proposed amendment would conflict with this provision.  Under the amendment the assembly could not increase taxes without a ratification by referendum to the voters."[24]

Similarly, in this case, land use planning and regulation authority is conferred on the borough through state statutes that expressly delegate these powers to the local assembly.[25]  As in *Whitson,* it would conflict with state law for the assembly to be divested of these powers.  It is true that in this case the Matanuska–Susitna Borough is not subject to an express prohibition on "acting otherwise than as provided" by state law as was the case for the Anchorage Borough in *Whitson.*[26]  However, the presence or absence of an express prohibition is less significant here.

While a home rule municipality such as Anchorage possesses "all legislative powers not prohibited by law or by charter,"[27] a general law municipality such as Matanuska–Susitna is an unchartered borough or city possessing only "legislative powers conferred by law."[28]

It could be argued that the initiative proposed in this case does not divest the Matanuska–Susitna borough assembly of its state-mandated role because it does not prevent the assembly from regulating land use, but rather merely puts a time limit on the duration of those enactments pending voter approval.  In *Municipality of Anchorage v. Repasky,*[29] we held that state statutes delegating to a municipal assembly the power to approve the school budget did not preclude the mayor from exercising a line item veto over that budget.[30]  However, the mayoral budget veto in *Repasky* is readily distinguishable from the popular reverse veto on land use regulation proposed here.  *Repasky* dealt with a home rule municipality possessing "all legislative powers not prohibited by law or by charter."[31]  In *Repasky,* the mayoral veto was grounded in the municipal charter; the municipality had chosen "to reallocate some of the assembly's legislative power by giving the mayor a veto power."[32]  Here, the Matanuska–Susitna Charter contains no similar reallocation of power.  Furthermore, we noted in *Repasky* that the Alaska legislature "would have recognized that municipal budget ordinances are legislative enactments which are typically subject to the veto or item veto power."[33]

19.  AS 29.40.030(a).

20.  608 P.2d 759 (Alaska 1980).

21.  *Id.* at 760.

22.  *Id.* at 761 (citing former AS 29.13.100; former AS 29.53.170).

23.  *Id.* (quoting former AS 29.13.100).

24.  *Id.*

25.  *See* AS 29.40.040 (regulation of land use by the assembly); AS 29.40.030 (adoption of the comprehensive plan by the assembly); AS 29.40.070 (adoption of platting requirements by the assembly).

26.  608 P.2d at 761 (quoting former AS 29.13.100).

27.  *Municipality of Anchorage v. Repasky,* 34 P.3d 302, 310 (Alaska 2001) (quoting Alaska Const. art. X, § 11).

28.  *Id.* (quoting AS 29.04.020).

29.  34 P.3d 302 (Alaska 2001).

30.  *Id.* at 313.

31.  *Id.* at 310 (quoting Alaska Const. art. X, § 11).

32.  *Id.* at 313.

33.  *Id.* at 312.

Unlike *Repasky*, the present case involves a general law municipality with "legislative powers conferred by law."[34] That law specifically confers the land use regulatory power upon the borough assembly.[35] Furthermore, it cannot be said that the state legislature anticipated when it delegated such land use authority to the borough assembly that the borough would submit every land use ordinance enacted by that assembly to referendum by the voters. To the contrary, such an arrangement subverts state policy goals. State law says that a borough assembly is required to enact a plan for the "systematic and organized development of the borough."[36] Such plans are to be "a compilation of policy statements, goals, standards, and maps for guiding the physical, social, and economic development, both public and private," of the borough.[37] It is plain from this statutory language that the legislature's policy goals included marking the land use planning and regulation process with certainty, continuity, consistency, and comprehensiveness.

However, under the proposed initiative, any land use ordinance the borough assembly enacted after July 1, 2007 would be only temporary and provisional, automatically terminating at the time of the next election unless approved by the voters. Similarly, any time the assembly acted to modify or implement its comprehensive plan, there would be uncertainty as to whether the law it passed was going to remain in long-term effect until it went on the ballot and received voter approval. If a given measure failed to win voter approval, the uncertainty and resulting policy and planning vacuum could easily continue for years while the borough attempted to craft a measure that would win voter approval. The state legislature did not intend such a piecemeal, uncertain process when it mandated that borough assemblies enact comprehensive plans for "the systematic and organized development of the borough."[38] The will of the people, as expressed through the legislature, would be thwarted by the proposed initiative.

Because the proposed initiative is unenforceable as a matter of law, we need not reach the superior court's alternative bases to uphold the borough clerk's action (i.e., the superior court's characterization of the initiative as a referendum and its determination that the initiative improperly dealt with administrative rather than legislative matters).

## B. The Superior Court Did Not Err in Its Award of Attorney's Fees By Denying Carmony Public Interest Litigant Status.

■ In awarding $1,633.50 in attorney's fees to the borough as the prevailing party, the superior court rejected Carmony's claim that he was shielded from such fees as a public interest litigant. We agree that Carmony was not a public interest litigant, although on different grounds than those given by the superior court.

The parties and the superior court treated the determinative issue here as whether Carmony had sufficient economic incentive to pursue this litigation. Alaska Statute 09.60.010(c)(2) bars an award of prevailing party attorney's fees for costs incurred defending "claims concerning constitutional rights" as long as the claims were not frivolous and "the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved."[39]

The superior court made ample findings in support of its conclusion that Carmony acted on behalf of his employer MEA and that MEA had economic incentives to promote the initiative in question. However, we conclude that the question of economic incentives does not matter because this case did not involve constitutional claims. As we held in *Griswold*, "the power to initiate [at the local level is] directly derived from AS 29.26.100, not article XI, section 1 of the Alaska Constitu-

---

34. *Id.* at 310 (quoting AS 29.04.020).

35. *See* AS 29.40.010–.040.

36. AS 29.40.020(b)(1); AS 29.40.030(b).

37. AS 29.40.030(a).

38. AS 29.40.020(b)(1); AS 29.40.030(b).

39. AS 09.60.010(c).

tion."[40] Because this case did not involve a constitutional claim, but rather concerned the statutory power of the local initiative, Carmony could not be protected by AS 09.60.010(c)(2) from an award of attorney's fees.

## V. CONCLUSION

Because the proposed ballot measure was unenforceable as a matter of law, we AFFIRM the superior court's ruling that the application for a petition was properly rejected by the borough clerk. Furthermore, because claims involving the local initiative power are not constitutional claims, we AFFIRM the award of attorney's fees.

**40.** *Griswold v. City of Homer,* 186 P.3d 558, 563 (Alaska 2008).