**ALLIANCE OF CONCERNED TAXPAYERS, INC.,**
Appellant,

v.

**KENAI PENINSULA BOROUGH,**
Appellee.

**Kenai Peninsula Borough, Appellant,**

v.

**Alliance of Concerned Taxpayers, Inc., Appellee.**

Nos. S–13596, S–13883.

Supreme Court of Alaska.

April 6, 2012.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant/Appellee Alliance of Concerned Taxpayers, Inc.

Colette G. Thompson, Borough Attorney, and Holly B. Montague, Deputy Borough Attorney, Soldotna, for Appellee/Appellant Kenai Peninsula Borough.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

This case concerns the validity of two 2005 Kenai Peninsula Borough (Borough) ordinances: one enacted by the Borough Assembly and the second enacted by voter initiative. The Borough Assembly enacted an ordinance in June 2005 that increased the sales tax rate from two percent to three percent. Then in an October 2005 election, Borough voters passed an initiative that required prior voter approval for all Borough capital projects with a total cost of more than one million dollars.

The Alliance for Concerned Taxpayers (ACT) challenged the sales tax increase and sought to enforce the capital projects voter approval requirement. ACT argued that the sales tax increase was impermissible under state statute because it was enacted without ratification by Borough voters. The Borough responded that voters had authorized the increase both by approving a three-percent sales tax rate in 1964 and by defeating a post-enactment referendum to repeal the increase in 2006. ACT also sought to enforce the capital project voter approval initiative. The Borough contended that requiring prior voter approval for capital projects was unlawful because it delegated budgeting authority to the voters in violation of Alaska law and because it violated the Alaska Constitution's limits on local initiative power that forbid voters to make or repeal appropriations.

The superior court granted summary judgment to the Borough on both matters: on the sales tax issue, reasoning that the 1964 voter action allowed the increase and the 2006 referendum defeat ratified it; and on the capital projects voter approval issue, reasoning that Proposition 4 was an unconstitutional use of the initiative power to appropriate a public asset. ACT appeals the merits of that ruling in case number S–13596. We affirm the superior court's grant of summary judgment on the sales tax issue and the capital project voter approval issue. We conclude that the 1964 voter authorization of a three-percent sales tax preserved the Borough's right to raise the rate to three percent, and that the 2006 defeat of the referendum to repeal the rate increase constituted a ratification of the increase. On the voter approval issue, we conclude that allowing voters to veto any capital improvement projects of over $1 million has the effect of diluting the Borough Assembly's exclusive control over the budget and is therefore an impermissible appropriation.

The superior court awarded the Borough attorney's fees as the prevailing party on the sales tax issue but determined that ACT was protected from paying attorney's fees on the capital project approval issue under the AS 09.60.010(c)(2) exception for constitutional litigants. The Borough cross-appeals the latter ruling in case number S–13883. We conclude that ACT has not asserted a constitutional right and that it does not fall under the constitutional litigant exception to the attorney's fees rule. We reverse the superior court's determination that ACT is protected from paying an attorney's fee award to the Borough by AS 09.60.010(c)(2).

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. The assembly-enacted sales tax increase

The Kenai Peninsula Borough, a second-class borough,[1] enacted Ordinance No.2005–09 (Ordinance 9) in June 2005. Ordinance 9 increased the sales tax rate from two percent to three percent. The relevant factual background shows that in October 1964 Borough voters authorized the Assembly to levy a sales tax not to exceed three percent, and that the Assembly established a three-percent sales tax in April 1965, though it reduced the rate to two percent in August 1975.

In June 1985 the State enacted AS 29.45.670. That statute provides: "A new sales and use tax or an increase in the rate of levy of a sales tax approved by ordinance does not take effect until ratified by a majority of the voters at an election." The statute was a re-numbered modification of AS 29.53.420,[2] and it included a "savings clause" which directed that "[a] right or liability of a municipality existing on January 1, 1986, is not affected by the enactment of this Act."[3]

Twenty years later, on June 7, 2005, the Borough Assembly enacted Ordinance 9, increasing the sales tax rate from two to three percent. The increase was to be effective on October 1, 2005, but the effective date was later extended to January 1, 2006.[4] On June 8, the day after Ordinance 9 was enacted, members of ACT and others filed three applications: (1) an application for an initiative to set the sales tax rate at two percent; (2) an application for an initiative to require 60% voter approval at a regular election to approve any sales tax rate over two percent; and (3) an application for a referendum to repeal Ordinance 9. During the October 2005 election, 54.17% of Borough voters approved an initiative setting the sales tax rate at two percent and requiring a 60% supermajority voter approval to increase that rate.

One year later, in October 2006, the referendum to repeal Ordinance 9 was put before the voters. The explanation of the repeal referendum in the voter's pamphlet stated that a "yes" vote would leave the sales tax at two percent, and a "no" vote would retain the ordinance and allow the sales tax to be increased to three percent. A 57.31% majority voted to retain the Ordinance. On April 3, 2007, the Assembly enacted Ordinance No.2007–07 to impose a three-percent sales tax effective January 1, 2008.

#### 2. Prior voter approval for capital projects

During the October 2005 election, Borough voters approved Initiative Ordinance No.2005–01 (Proposition 4), which required prior voter approval for Borough capital improvement projects with a total cost of more than $1 million. As codified at Kenai Peninsula Borough Code (KPB) 05.04.110 (2005), Proposition 4 read:

(A.) All capital improvement projects to be constructed or acquired by the borough must be approved by the voters of the borough at a regular or special election, before the project is constructed or acquired if the total project cost is more than $1,000,000, including architectural, engineering, inspection, design, administration

---

1. A second-class borough is a "general law" municipality, meaning that it only has those powers conferred by statute (as opposed to a home rule borough, which may exercise all legislative powers not prohibited by law). Alaska Const. art. X, § 11; AS 29.04.010; AS 29.04.020; AS 29.04.030. A second-class borough, like all municipalities, has the general power to levy taxes and enforce ordinances. AS 29.35.010. A second-class borough has certain additional powers conferred by statute, some of which are mandatory and some of which are discretionary. *See, e.g.,* AS 29.35.150–.180; AS 29.35.210.

2. AS 29.53.420 provided in relevant part:

The assembly shall hold a referendum vote on the question of enacting a sales tax or increasing the rate of levy of sales taxes. Borough sales tax propositions may be presented only once in any 12–month period. A sales tax proposition may be submitted to the voters at a regular or special election or at a general election of the state.

3. SLA 1985, ch. 74, § 89.

4. Under AS 29.26.180(b), when ACT filed a referendum petition on Ordinance 9, the effective date of Ordinance 9 was suspended pending the results of the referendum election.

or any other cost. This section applies to all proposed capital improvement projects to be financed with borough funds which are not the proceeds of a bond issue approved by voters. This section does not apply to insurance proceeds covering the repair or replacement of damaged borough capital improvements. A capital improvement project that is proposed to be built in phases shall include the projected cost of all phases as the total project cost for purposes of this ordinance.

(B.) When the total projected cost of a capital improvement project as defined in this section is more than $1,000,000 it must receive an affirmative vote by no less than 60 percent of the affected voters voting at a borough election for such a project to be approved.[5]

ACT alleged that by the time members of ACT filed a complaint against Proposition 4 in December 2006, the Borough had approved at least two capital improvement projects costing more than $1 million without prior voter approval: the purchase of a CT scanner for South Peninsula Hospital, and replacement of the Spruce Creek bridge.[6] ACT also alleged that the Borough intended to continue to undertake construction of capital projects without prior voter approval "unless restrained from doing so."[7]

### B. Proceedings

ACT filed a complaint on December 26, 2006, challenging the sales tax increase and seeking to enforce the capital project voter approval requirement. ACT requested declaratory and injunctive relief. ACT argued the sales tax increase and alleged failure to follow Proposition 4 violated due process under the Alaska Constitution and asked for an award of full costs and attorney's fees "in this public interest litigation." The Borough answered on January 23, 2007, asserting affirmative defenses including that Proposition 4 violated the constitutional prohibition on making or repealing an appropriation through the initiative power. The Borough also sought costs and attorney's fees.

### 1. The sales tax increase (Ordinance 9) summary judgment proceedings

In May 2007 the parties agreed that no material facts were in dispute regarding the sales tax issue, and the superior court confirmed that the issues involved were questions of law. On December 4, 2007, ACT filed a motion for summary judgment on the sales tax issue. The Borough responded by filing its own cross-motion for summary judgment.

The superior court determined, in its December 31, 2007 decision, that Ordinance 9 was valid and the sales tax rate increase to three percent would be effective on January 1, 2008. The decision cited our direction that AS 29.45.650(a), which authorizes boroughs to levy and collect a sales tax, must be interpreted "in favor of the broad power of municipal governments."[8] Noting that Borough voters had twice approved a sales tax rate of up to three percent at a general election, first in 1964 and again in 2006, the superior court concluded that "the voters' action in 1964 approving a sales tax rate up to three percent has continuing legal force and effect sufficient to authorize the increase to three percent in [Ordinance 9] notwithstanding AS 29.45.670." In addition, the superior court concluded that even without the 1964 approval the sales tax rate increase to three percent was valid because the October 2006 majority vote defeating the referendum on Ordinance 9 "satisfie[d] the voter approval requirement

---

**5.** Proposition 4 was modified in 2008 to exclude grant funds, private gifts, and hospital plant expansion and replacement funds. It was modified again in 2010 to raise the expenditure threshold to $2,000,000 and to provide that the threshold would increase each year by $50,000. KPB 05.04.110 (2010).

**6.** The Borough denies that either the CT scanner or the Spruce Creek bridge would have been the types of projects properly referred to voters under Proposition 4 because the CT scanner was not a capital improvement and the Spruce Creek bridge replacement was an emergency.

**7.** In its November 1, 2008 motion for summary judgment, ACT alleged that eight other capital projects over $1 million had been approved in violation of KPB 05.04.110 (2008).

**8.** *City of St. Mary's v. St. Mary's Native Corp.*, 9 P.3d 1002, 1007 (Alaska 2000).

in AS 29.45.670." The superior court granted summary judgment to the Borough.

### 2. The capital project voter approval (Proposition 4) summary judgment proceedings

After the parties and superior court agreed in March 2008 that only issues of law remained in the dispute over Proposition 4, ACT filed a motion for summary judgment on the capital projects approval issue on November 8, 2008. The Borough again responded with a cross-motion for summary judgment on the issue.

The superior court issued a decision on March 10, 2009, ruling that Proposition 4 was invalid both as to the supermajority requirement and the voter approval requirement. Regarding the supermajority issue, the superior court stated that "a mere majority cannot impose a supermajority obligation on other voters for approval of future Borough ordinances." But the superior court determined that the supermajority provision of the initiative ordinance was severable, and so went on to address the validity of the remainder of Proposition 4. The superior court concluded that "[t]he initiative ordinance crafted by ACT restricts the appropriation power of the Borough Assembly for capital projects to prior approval by voting residents" and that "Article XI, section 7, of the Alaska Constitution makes it clear that the initiative power cannot be used to make or repeal appropriations." The superior court granted summary judgment to the Borough.

### 3. Attorney's fee proceedings

Final judgment on all issues relating to the sales tax and capital projects issues was entered on July 30, 2009. On August 13, 2009, the Borough filed a motion for attorney's fees. ACT opposed the motion, arguing that it is a "public interest non-profit corporation" and that it was "attempting to protect [citizens' and residents'] right of initiative—a right granted to them under the Constitution and the laws of the [S]tate of Alaska." In a March 18, 2010 decision, the superior court found that the capital project approval issue "implicat[ed] federal and state constitutional concepts" and concluded that ACT was protected pursuant to AS 09.60.010(c)(2) from having to pay an attorney's fee award on that issue.[9] On March 31 the Borough filed a motion for reconsideration, arguing that the superior court failed to consider this court's rulings establishing that the municipal initiative power is statutory, not constitutional, and that to be protected by AS 09.60.010(c)(2) a litigant must fail to prevail in "asserting" a constitutional right rather than simply lose a case "where any constitutional concepts are implicated." The superior court denied the Borough's motion for reconsideration on May 3, 2010, explaining that ACT "did raise state constitutional issues regarding the initiative restrictions on the capital projects and supermajority issues," and adding that the superior court had referenced numerous constitutional provisions in its decision on the capital project approval issue.

ACT appeals the superior court's July 30, 2009 final judgment denying ACT summary judgment on the merits of both the sales tax and capital project voter approval issues (case number S–13596). The Borough cross-appeals the superior court's March 18, 2010 decision awarding ACT attorney's fees on the capital project approval issue (case number S–13883).

### III. STANDARD OF REVIEW

We review grants of summary judgment de novo, "draw[ing] all factual inferences in favor of, and view[ing] the facts in the light most favorable to, the party against whom summary judgment was granted."[10]

Questions of law and questions of statutory interpretation are reviewed de novo, adopting the rule of law which is "most persuasive in light of precedent, reason, and

---

9. The superior court found that the sales tax issue "did not turn on federal or state constitutional issues" and awarded the Borough costs and attorney's fees of $2,544.75 on that issue.

10. *Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough,* 135 P.3d 1000, 1002 (Alaska 2006) (internal footnotes omitted).

policy."[11] We interpret the meaning of a statute "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[12] We use a "sliding-scale approach" when interpreting statutes, "under which the clearer the statutory language is, the more convincing legislative history must be to justify another interpretation."[13]

█ When reviewing initiatives, we "construe voter initiatives broadly so as to preserve them whenever possible. However, initiatives touching upon the allocation of public revenues and assets require careful consideration because the constitutional right of direct legislation is limited by the Alaska Constitution."[14]

## IV. DISCUSSION

### A. The Sales Tax Voter Ratification Requirement Is Satisfied By The 1964 Authorization Of A Three–Percent Sales Tax And The 2006 Defeat Of The Repeal Referendum.

Alaska Statute 29.45.670 provides that "an increase in the rate of levy of a sales tax approved by ordinance does not take effect until ratified by a majority of the voters at an election." ACT argues that Ordinance 9, which increased the sales tax rate from two to three percent without direct ratification by the voters, is contrary to the requirements of AS 29.45.670. The Borough agrees voter ratification is required by AS 29.45.670, but argues that the requirement was satisfied by both the 1964 authorization of a sales tax rate of up to three percent and the 2006 defeat of the referendum that would have repealed Ordinance 9. ACT argues on appeal that neither of these events fulfilled the statutory requirement.

█ We generally "give 'liberal construction ... to the powers of local government units.' "[15] In regard to municipalities' power to levy and collect taxes, we have cautioned that we will "not be quick to [infer] limitations on the taxing authority of a municipality where none are expressed."[16] And in reviewing AS 29.45.670 in *City of St. Mary's v. St. Mary's Native Corp.*, we observed that "Alaska's constitution and our prior case law require us to interpret AS 29.45.650(a) in favor of the broad power of municipal governments."[17] Moreover, there is a "presumption that proceedings of the governing body of a municipality have been conducted in accordance with the law."[18]

█ ACT contends that the 1964 ordinance authorizing a sales tax rate of three percent did not satisfy the voter ratification requirement of AS 29.45.670 because the "rate of levy" referred to in the statutory text refers to the actual rate of levy in place at the time an increase is contemplated, not some earlier authorized rate of levy.[19] The

**11.** *Kohlhaas v. State, Office of Lieutenant Governor,* 147 P.3d 714, 717 (Alaska 2006) (citing *Alaska Action Ctr., Inc. v. Municipality of Anchorage,* 84 P.3d 989, 991 (Alaska 2004)).

**12.** *Lot 04B & 5C, Block 83 Townsite v. Fairbanks N. Star Borough,* 208 P.3d 188, 191 (Alaska 2009) (internal quotation marks omitted).

**13.** *Interior Cabaret,* 135 P.3d at 1002.

**14.** *Anchorage Citizens for Taxi Reform v. Municipality of Anchorage,* 151 P.3d 418, 422 (Alaska 2006) (quoting *Pullen v. Ulmer,* 923 P.2d 54, 58 (Alaska 1996)).

**15.** *Interior Cabaret,* 135 P.3d at 1002 (quoting Alaska Const. art. X, § 1).

**16.** *Bookey v. Kenai Peninsula Borough,* 618 P.2d 567, 569 (Alaska 1980) (quoting *Liberati v. Bristol Bay Borough,* 584 P.2d 1115, 1121 (Alaska 1978)); *see also Fannon v. Matanuska–Susitna Borough,* 192 P.3d 982, 984 (Alaska 2008) (refer-

encing a superior court's comment that there is "a long history of Alaska Supreme Court precedent broadly interpreting municipal taxation powers").

**17.** 9 P.3d 1002, 1007 (Alaska 2000); AS 29.45.650(a).

**18.** *McCormick v. City of Dillingham,* 16 P.3d 735, 738 (Alaska 2001) (quoting *Liberati,* 584 P.2d at 1118).

**19.** ACT adds in its reply brief that the 1964 authorization dictated that the sales tax was to be used for school improvements and thus does not authorize a *general* sales tax levy of three percent. But because ACT did not raise this argument in the superior court or in its opening brief, it has waived it. *See Braun v. Alaska Commercial Fishing & Agric. Bank,* 816 P.2d 140, 145 (Alaska 1991) ("Attention to the issue [omitted from points on appeal and insufficiently

statute specifies, however, that only "an increase in the rate of levy of a sales tax approved by ordinance" must be submitted to voters for ratification. In 1964 Borough voters approved a proposition that authorized the Borough "to the extent provided by law ... to levy a ... sales and use tax subject to such exemptions as the Assembly may prescribe and not exceeding three percent." In 1975 the Borough Assembly found that "a reduction in taxes [could] be made without interfering [sic] with any essential services." The Assembly therefore enacted an ordinance "lev[ying] a consumers' sales tax of two percent." No voter action was taken regarding this reduction. The public voted to allow the Borough to levy a sales tax of up to three percent and the Borough has adjusted that rate over the years without voter ratification.

Because the three-percent rate of levy in Ordinance 9 was not an increase from the rate previously "approved by ordinance," no additional voter ratification was required.[20] In addition, the savings clause included in the same chapter as AS 29.45.670 specifically preserves any "right" of the Borough as it existed in 1986.[21] As the Borough points out, when AS 29.53.420, the precursor to AS 29.45.670, was enacted in 1972, the Borough sales tax rate of levy was three percent. If the Borough had the right to impose a sales tax at a rate of levy of three percent in 1972, there does not appear to be any reason that the savings clause would not have preserved that right.

California considered a similar issue in *AB Cellular LA, LLC v. City of Los Angeles*.[22] The California court of appeals considered AB Cellular's contention that the City was required to submit an increased cell phone tax to voters for approval pursuant to a proposition giving voters the right to approve any increase of local tax before it goes into effect.[23] The language of that proposition stated in part that "[n]o local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote." [24] Initially, the court noted that a tax is not deemed "increased" under California's statutory definition if it "[i]mplements or collects a previously approved tax, ... so long as the rate is not increased beyond the level previously approved." [25] The California court then explained: "[A] local taxing entity can enforce less of a local tax than is due under a voter-approved methodology, or a grandfathered methodology, and later enforce the full amount of the local tax due under that methodology without transgressing [the voter approval proposition].... The evil to be counteracted is the increase of local

briefed in an opening brief] in a reply brief does not resuscitate it."). Moreover, it appears that the proceeds from the three-percent sales tax levy now in effect under KPB 05.18.100 are also to be used exclusively for borough school purposes, as ACT appeared to admit at oral argument. *See* KPB 05.18.110 (1990).

**20.** Similarly, ACT's argument that the "rate of levy of sales tax was actually set at 2% by ordinance several times" is unpersuasive because the rate of levy was also set at three percent by ordinance in 1965.

**21.** There is no question that municipalities and boroughs have the power to levy taxes. *See* AS 29.35.010 ("All municipalities have the following general powers, subject to other provisions of law ... (6) to levy a tax ..."); AS 29.45.650(a) ("[A] borough may levy and collect a sales tax on sales, rents, and on services provided in the borough."); *see also Stevens v. Matanuska–Susitna Borough*, 146 P.3d 3, 7 (Alaska App.2006) ("All municipalities, including second-class boroughs, have general powers to, among other things, establish salaries for municipal employ-

ees, levy taxes, enforce ordinances, and acquire and dispose of property."); *Bookey*, 618 P.2d at 568 (Alaska 1980) ("Boroughs and cities may levy and collect a sales tax."). In fact, this power is arguably "mandatory" for boroughs pursuant to AS 29.35.170. *See* AS 29.35.170(a) ("A borough shall assess and collect property, sales, and use taxes that are levied in its boundaries, subject to AS 29.45.").

And this court has referred to a municipality's "right" to tax in at least two prior cases. *See Cool Homes, Inc. v. Fairbanks N. Star Borough*, 860 P.2d 1248, 1253 (Alaska 1993); *Alascom, Inc. v. N. Slope Borough, Bd. of Equalization*, 659 P.2d 1175, 1180 (Alaska 1983).

**22.** 150 Cal.App.4th 747, 59 Cal.Rptr.3d 295 (Cal. App.2007).

**23.** *Id.* at 752–53, 59 Cal.Rptr.3d 295.

**24.** *Id.* at 760, 59 Cal.Rptr.3d 295.

**25.** *Id.*

taxes beyond what was formerly approved." [26]

We agree with the California court's reasoning in *AB Cellular*. The Borough voters expressly authorized the Borough to enact a sales tax of up to three percent, and the savings clause at AS 29.45.670 preserved the Borough's right to do so. Although the Borough subsequently reduced the tax rate to two percent, it did not need to seek further voter ratification to raise the tax rate to the amount approved by voters in 1964.[27]

## B. Requiring Prior Voter Approval For All Capital Projects With A Cost Of Over $1 Million Is An Impermissible Appropriation.

Proposition 4 required prior voter approval for Borough capital projects with a total cost of more than $1 million. It was approved by Borough voters in 2005. As it appeared codified at KPB 05.04.110 (2005), it provided:

(A.) All capital improvement projects to be constructed or acquired by the borough must be approved by the voters of the borough at a regular or special election, before the project is constructed or acquired if the total project cost is more than $1,000,000, including architectural, engineering, inspection, design, administration or any other cost....

(B.) When the total projected cost of a capital improvement project as defined in this section is more than $1,000,000 it must receive an affirmative vote by no less than 60 percent of the affected voters voting at a borough election for such a project to be approved.

The question presented here is whether Proposition 4 is an appropriation and therefore an impermissible initiative. Alaska Statute 29.26.100 grants the power of lawmaking by initiative on the local level to municipal residents. But the statute also restricts the initiative power, directing that "[t]he powers of initiative and referendum ... do not extend to matters restricted by art. XI, § 7 of the state constitution." Article XI, section 7 of the Alaska Constitution, in turn, states that "[t]he initiative shall not be used to dedicate revenues, [or to] make or repeal appropriations."

The superior court found that Proposition 4 was invalid because a voter approval requirement would "restrict the budget and capital program appropriation power vested by the Legislature in the assembly," and that in light of the constitutional restrictions on the initiative power "[i]mposing a prior voting resident [approval] threshold by initiative would improperly restrict the power of the assembly to make appropriations." ACT argues that the ordinance does not violate article XI, section 7 of the Alaska Constitution because it does not explicitly make or repeal an appropriation. ACT distinguishes Proposition 4 from other initiatives "whose primary object is to require the outflow of government assets" because it "does not dispose of public assets nor does it involve the making of an appropriation of public assets."

ACT argues that we have narrowly construed the constitutional prohibition on initiatives making or repealing an appropriation. The Borough contends that we have read the prohibition more broadly, to reach any initiative that restricts the government's authority to "allocate funds between competing needs," thereby "arrest[ing] the assembly's control over the budget."

While the term "appropriation" is not defined in the statute or in the Alaska Constitution, we have held that an initiative "proposes to make an appropriation if it 'would set aside a certain specified amount of money or property for a specific purpose or object in such a manner that is executable, mandatory, and reasonably definite with no further legislative action.' " [28] We have de-

---

**26.** *Id.* at 763–64, 59 Cal.Rptr.3d 295.

**27.** Because the 1964 authorization gave the Borough the authority to set the sales tax rate at up to three percent without need for further ratification, we do not need to reach the question of the 2006 defeat of the referendum to repeal Ordinance 9. But we note that voters rejected the referendum on Ordinance 9's repeal. The voter's pamphlet states that if the referendum failed, "a 3 percent sales tax would become effective," so the voters' rejection of the referendum was an approval of the three-percent tax.

**28.** *Alaska Action Ctr., Inc. v. Municipality of Anchorage*, 84 P.3d 989, 993 (Alaska 2004) (quoting *City of Fairbanks v. Fairbanks Convention & Visitors Bureau*, 818 P.2d 1153, 1157 (Alaska 1991));

scribed in detail the two-part inquiry to determine whether a particular initiative is an improper appropriation. First, "we determine whether the initiative deals with a public asset."[29] There is no question that the municipal funds involved are public assets; no item is more clearly a public asset than public revenue.[30]

Second, "we determine whether the initiative would appropriate [the public] asset," which involves looking to the "two core objectives" of the constitutional limitation.[31] The first objective is to prevent " 'give-away programs' that appeal to the self-interest of voters and endanger the state treasury" by allowing "rash, discriminatory, and irresponsible" appropriations.[32] The second, related objective is to "preserv[e] legislative discretion by ensuring that the legislature, and *only* the legislature, retains control over the allocation of state assets among competing needs."[33]

This second core objective was recognized in our decision in *McAlpine v. University of Alaska*.[34] The initiative in *McAlpine* dictated the creation of a community college system separate from the University of Alaska and required the university to transfer a specified amount of property to the community college system.[35] We held that the initiative was impermissible not because it was a "give-away" of resources but because it "designate[d] the use of" state assets.[36]

We have since clarified that the constitutional restriction on the initiative power is meant to retain the legislature's control of the "process" of making appropriations.[37] We held that an initiative is unconstitutional when it causes the voters to "essentially usurp the legislature's resource allocation role."[38] Finally, we recently explained that the "primary question" in assessing the second core objective "is whether the initiative narrows the legislature's range of freedom to make allocation decisions in a manner sufficient to render the initiative an appropriation."[39] This case presents the question whether an initiative may run afoul of the core objectives underlying the initiative restrictions when it allocates public assets *away from* a particular purpose. We hold that it can.

We conclude that Proposition 4 sufficiently narrows the Borough's ability to make allocation decisions to render it an appropriation. ACT relies heavily on our decision in *City of Fairbanks v. Fairbanks Convention & Visitors Bureau*.[40] There, we upheld an initiative that repealed a city code designating a certain portion of bed tax revenues for purposes of tourism development, and instead deposited the revenues in a discretionary fund.[41] We reasoned that the initiative did not reduce the city council's control over the appropriations process but rather *increased* its discretion in appropriating funds.[42] In

---

see also *Fairbanks Convention & Visitors Bureau*, 818 P.2d at 1156–57 (noting that "appropriation" may be defined more narrowly when considering whether an initiative or referendum repeals an appropriation than when it makes an appropriation).

29. *Anchorage Citizens for Taxi Reform v. Municipality of Anchorage*, 151 P.3d 418, 422 (Alaska 2006).

30. *See, e.g., Thomas v. Rosen*, 569 P.2d 793, 796 (Alaska 1977) (defining "appropriation" as involving setting aside "public revenue").

31. *Anchorage Citizens for Taxi Reform*, 151 P.3d at 423.

32. *Id.* (internal quotation marks omitted).

33. *Id.* at 423 (internal quotation marks omitted) (emphasis in original).

34. 762 P.2d 81 (Alaska 1988).

35. *Id.* at 87–88.

36. *Id.* at 89.

37. *Staudenmaier v. Municipality of Anchorage*, 139 P.3d 1259, 1263 (Alaska 2006) (quoting *City of Fairbanks v. Fairbanks Convention & Visitors Bureau*, 818 P.2d 1153, 1156 (Alaska 1991)).

38. *Id.*

39. *Pebble Ltd. P'ship ex rel. Pebble Mines Corp. v. Parnell*, 215 P.3d 1064, 1075 (Alaska 2009) (citing *Pullen v. Ulmer*, 923 P.2d 54, 64 n. 15 (Alaska 1996)).

40. 818 P.2d 1153 (Alaska 1991).

41. *Id.* at 1154–55.

42. *Id.* at 1157–58.

addition, we explained that a measure was not an appropriation where it did "not reflect an action taken by the governing body after annual approval of the budget." [43] ACT argues that there is no prohibition against allowing voters to approve a major project in advance of the budget approval.

Referring capital projects to voters, however, will almost invariably result in voters "vetoing" certain projects, at which point there is nothing the Borough can do to go forward with the project. In ACT's view this means that the municipal funds are still available to be used at the Borough's discretion. But the voters' ability to veto a capital project, even prior to budget approval, infringes on the assembly's ability to allocate resources among competing uses because there is nothing that the assembly can do to appropriate money for that project.

In *Pullen v. Ulmer*, we struck down an initiative that established a salmon harvest priority system as contravening both of the "core objectives" of the constitutional provision because it would lead to the "very real possibility that [some groups] will be excluded" from using the resource.[44] Under our decision in *Pullen*, an initiative may make an impermissible appropriation not only when it designates public assets for some particular use, but also when it allocates those assets *away from* a particular group or purpose.[45] Proposition 4 dictates the same result, although in a less direct fashion: While the ordinance itself does not allocate public assets, it requires that voters be permitted to allocate those resources. Practically, when voters refuse to approve a capital project they allocate municipal funds away from the particular project, which interferes with the Borough's exclusive power to allocate funds among competing uses. Proposition 4 thus violates the underlying purposes of the constitutional restrictions on municipal citizens' initiative power.[46]

### C. ACT Does Not Fall Under The AS 09.60.010(c)(2) Attorney's Fee Exception For Constitutional Litigants.

Alaska Statute 09.60.010(c)(2) provides that "[i]n a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the [Alaska] Constitution," a litigant "may not [be ordered] to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant as plaintiff ... did not prevail in asserting the right." [47] The superior court determined that AS 09.60.010(c)(2) "preclude[d] a fee award in favor of [the Borough] against ACT on the capital spending issues."

 The Borough argues in its cross-appeal that ACT is not entitled to statutory protection from an attorney's fee award for at least three reasons: (1) the case did not involve the "protection of the right to enact local laws by initiative" because the initiative was, in fact, placed on the ballot and later challenged as contrary to statute; (2) the initiative was local and thus based on statutory authority rather than the federal or state constitutions; and (3) any constitutional concepts implicated in the case were "collateral at best" and so ACT did not actually prevail on a constitutional claim. ACT counters that the superior court's decision was correct because the Alaska Constitution protects the

---

43. *Id.* at 1157.

44. 923 P.2d at 64.

45. *See also* 2 Proceedings of the Alaska Constitutional Convention (PACC) 941 (Dec. 16, 1955) (discussing that the initiative should not be used to "try[ ] to nullify" "functions of the government that have to be carried on ... by cutting off appropriations for them").

46. The superior court also determined on summary judgment that the 60% supermajority voter approval requirement of Proposition 4 could not be imposed by initiative. ACT did not identify this issue in its points on appeal, its statement of issues presented, or its discussion in its opening brief. ACT has therefore waived the issue. *See Gunderson v. Univ. of Alaska, Fairbanks*, 902 P.2d 323, 327 n. 5 (Alaska 1995) (holding that issue not included in points on appeal is waived). Moreover, it appears that KPB 05.04.110 was recently amended with the supermajority provision deleted.

47. This second provision is the corollary to section (c)(1), which provides that full reasonable attorney's fees and costs shall be awarded to a "claimant, who, as plaintiff ... has prevailed in asserting the right."

municipal initiative power and the capital project approval issue did concern constitutional rights. ACT also asks this court to conclude that "[a]ll municipal initiative cases should be treated as ... arising under the Constitution of Alaska."

We will construe a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." [48] The text of AS 09.60.010(c)(2) provides that the protection against attorney's fees only applies if the action "concern[ed] the establishment, protection, or enforcement of a [constitutional] right." [49] Thus, the correct inquiry is whether this case concerned a constitutional right. The only right at issue here was the right of municipal citizens to legislate by initiative. We have definitively concluded that the local initiative power is statutory rather than constitutional.[50] In *Griswold v. City of Homer*, we determined that "because the initiative was local, and not statewide, the power to initiate ... was directly derived from AS 29.26.100," not the Alaska Constitution.[51] And in *Carmony v. McKechnie*, we again addressed the origins of the municipal initiative power in the context of a public interest litigant. We held that the plaintiff seeking review of a municipal ballot initiative did not qualify as a public interest litigant.[52] Citing *Griswold*, we explained that because the case "did not involve a constitutional claim, but rather concerned the statutory power of the local initiative," the plaintiff "could not be protected by AS 09.60.010(c)(2) from an award of attorney's fees." [53]

We reaffirm our earlier rulings that the local initiative power is statutory in origin. Article X of the Alaska Constitution, which concerns local government, does not discuss the initiative and referendum power. Article XI, which concerns initiative powers, does not expressly reserve a local initiative right.

Delegates to the Constitutional Convention did not indicate that article XI was intended to preserve a local initiative power. Two delegates did discuss a local initiative power, but their exchange implied that local governments could include in the charter the referendum power or not, as they chose. As delegate Victor Fischer stated, "When [the people of a borough] adopt a charter, they will get together, just as we're doing here, and write the constitution or charter for that borough. And they can put in referendum or they can leave them out." [54] Had the delegates thought the constitution guaranteed a local initiative right, it would not have been necessary to discuss local choice.

Here, the constitutional limitations on the statutory right for local citizens to legislate by initiative are still incorporated into and imposed by AS 29.26.100, even though an analysis of the limitations necessitates an analysis of constitutional case law. We therefore hold that ACT did not raise issues concerning the establishment, protection, or enforcement of a right under the Alaska Constitution and therefore is not entitled to protection from an attorney's fee award under AS 09.60.010(c)(2).

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the superior court with respect to the grants of summary judgment in favor of the Borough on the merits of Ordinance 9 and Proposition 4. We REVERSE the superior court's determination that ACT qualifies as a constitutional litigant under AS 09.60.010.

CHRISTEN, Justice, not participating.

---

**48.** 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46:6, at 231–42 (7th ed.2007).

**49.** AS 09.60.010(c).

**50.** *Carmony v. McKechnie*, 217 P.3d 818 (Alaska 2009); *Griswold v. City of Homer*, 186 P.3d 558 (Alaska 2008).

**51.** *Griswold*, 186 P.3d at 563.

**52.** *Carmony*, 217 P.3d at 823–24.

**53.** *Id.* at 824.

**54.** 4 PACC 2677 (Jan. 19, 1956).